**MᴄGᴜɪʀᴇWᴏᴏᴅs LLP**
Michael D. Mandel, Esq. (SBN 216934)
    Email:   mmandel@mcguirewoods.com
Bethany A. Pelliconi, Esq. (SBN 182920)
    Email:   bepelliconi@mcguirewoods.com
Brian D. Fahy, Esq. (SBN 266750)
    Email:   bfahy@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA  90067-1501
Telephone:  310.315.8200
Facsimile:  310.315.8210

Attorneys for Defendant
BANK OF AMERICA, N.A.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON BELEVICH, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA NATIONAL ASSOCIATION, BANK OF AMERICA, N.A., BANK OF AMERICA NATIONAL ASSOC and DOES 1 through 50 inclusive,<br><br>    Defendants. | CASE NO.  2:15-cv-9171<br><br>[Los Angeles Superior Court Case No. BC595333]<br><br>**DEFENDANT BANK OF AMERICA, N.A.'S NOTICE OF REMOVAL OF CIVIL ACTION  FROM STATE COURT**<br><br>Complaint Filed:     September 21, 2015<br>FAC Served:          October 27, 2015 |

72780457.2

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant BANK OF AMERICA, N.A. ("BANA"), by and through its undersigned counsel, hereby removes the above-entitled action currently pending in the Superior Court of the State of California in and for the County of Los Angeles (the "State Court") to the United States District Court for the Central District of California on the grounds that this Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331, 1332(d), 1441 and/or 1442(a),  and/or all other applicable bases for removal.  In support of its Notice of Removal, BANA avers as follows:

## I.   PLEADINGS AND PROCEEDINGS

1.   Plaintiff Anton Belevich ("Plaintiff") filed a Complaint against BANA (the "Complaint") in the State Court on September 21, 2015, in a case styled as *Anton Belevich v. Bank of America, N.A.*, Case No. BC595333 (the "State Court Action").  He filed a First Amended Complaint ("FAC") on October 23, 2015.

2.   On October 27, 2015, BANA was originally served with this lawsuit. On that date, BANA was served with a copy of the FAC, a copy of which is attached hereto as Exhibit A.  The FAC constitute all of the process, pleadings, and orders that have been served on BANA in the State Court Action.

3.   BANA is informed and believes that it is the only defendant whom has been properly served with process in the State Court Action.  As such, BANA is the only defendant needed to join and consent to this removal.

## II.   TIMELINESS OF REMOVAL

4.   This action has not previously been removed to federal court.

5.   On October 27, 2015, BANA, through its registered agent for service of process, was personally served with the FAC from the State Court Action.  Thus, this Notice of Removal is filed with this Court within 30 days of service of Plaintiff's FAC and is timely under 28 U.S.C. § 1446(b).

### III.   TRADITIONAL DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332(a)(1)

6.     Removal is proper on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) on grounds that BANA is a citizen of a state different from Plaintiff and the amount-in-controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

### DIVERSITY OF CITIZENSHIP

7.     **Plaintiff's Citizenship.**  Plaintiff at all times relevant to the FAC has been a citizen and resident of the State of California and worked for BANA in California.  *See* Exhibit A (Complaint), ¶¶ 1, 13; *see also* Declaration of Joseph Bush ("Bush Decl."), ¶ 9.  BANA is informed and believes and therefore alleges that Plaintiff has the intent to remain in California.  *See, e.g.*, *Mondragon v. Capital One Auto Fin.*, 776 F.3d 880, 2013 U.S. App. LEXIS 23856 at *14 (9th Cir. 2013) (holding that, in connection with removal to federal court, a person's continuing domicile in a state establishes citizenship "unless rebutted with sufficient evidence of change"); *Lew v. Moss*, 797 F.2d 747, 751-52 (9th Cir. 1986) (holding that California was the state of domicile for a party with a California residential address).

8.     **Bank of America, N.A.'s Citizenship.**   Pursuant to 28 U.S.C. § 1332(c)(1), BANA is a citizen of the State of North Carolina (the location of its main office). BANA is a national banking association chartered under the laws of the United States.  *See* Bush Decl., ¶ 7.  28 U.S.C. § 1348 ("Section 1348") governs the citizenship of national banking associations for diversity purposes.  Section 1348 provides, in relevant part, that "[a]ll national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the states in which they are respectively located."  28 U.S.C. § 1348.  For the purpose of diversity jurisdiction, a national banking association is "located" only in the state designated in its articles of association as its main office, even though it has branch offices in other states.  *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 317-18

(2006).  *See also American Surety Co. v. Bank of Cal.*, 133 F.2d 160 (9th Cir. 1943); *U.S. Nat'l Bank v. Hill*, 434 F.2d 1019 (9th Cir. 1970).  BANA is headquartered in, has its principal place of business in, and therefore is "located" in North Carolina. *See* Bush Decl., ¶ 5.  BANA's articles of association designate Charlotte, North Carolina as the location of its main office.  Its principal executive offices, including the office of its President, are located in Charlotte, North Carolina.  *Id.* Furthermore, BANA's certificate from the Office of the Comptroller of the Currency ("OCC") states that it is located in Charlotte, North Carolina, and the OCC has issued an Interpretive Letter regarding BANA's North Carolina citizenship for purposes of diversity jurisdiction.  *Id.*, ¶ 8.  In short, under the standard set forth in *Wachovia* and *American Surety*, BANA's principal place of business is in the State of North Carolina.  Further, given that BANA's headquarters are in Charlotte, North Carolina, that its officers direct, control and coordinate its activities from there, and that the majority of its executive and administrative functions are performed there, its state of citizenship is North Carolina, and not California, even under the standard set forth in *Hertz Corp. v. Friend*, 559 U.S. 77, 77-78 (2010).  *See* Bush Decl., ¶¶ 5-7.

9.  **Doe Defendants.**  The FAC also names "DOES 1 through 50" as defendants.  For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(b).  Therefore, where removal jurisdiction is based on 28 U.S.C. § 1332, the citizenship of all of the "Doe" defendants is to be disregarded.

10.  Accordingly, the diversity of citizenship between Plaintiff (California) and BANA (North Carolina) establishes sufficient basis for removal of this action under CAFA.

## AMOUNT IN CONTROVERSY

11.  Plaintiff does not allege a specific amount in controversy, but instead seeks the following relief: an unspecified amount of "unpaid wages and for all

applicable penalties" for his First Cause of Action for Failure to Provide Meal Periods Violation of Labor Code § 226.7 and 512; "all applicable wages and/or penalties" for his Second Cause of Action for Failure to Provide Accurate Itemized Statements in Violation of California Labor Code § 226; "restitution and injunctive relief" for his Third Cause of Action for Waiting Time Penalties under Labor Code § 201-203 *et seq.*; "compensation according to proof and less appropriate offsets pursuant to California Labor Code § 203" for his Fourth Cause of Action for Unfair Competition in Violation of California Business & Professions Code § 17200 *et seq.*; "penalties pursuant to the PAGA" for his Fifth Cause of Action for the Private Attorneys' General Act, California Labor Code § 2698 *et seq.*; and "reasonable attorneys' fees, expenses and costs and any such other and further relief the court may deem just and proper." *See* Exhibit A (Complaint), Prayer for Relief. Thus, the Court must consider as evidence of the amount in controversy that which is "facially apparent" on the Complaint, as well as facts properly pleaded in the removal petition, particularly where, as here, the amount in controversy is not plainly evident from the pleadings. *See Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 984 (S.D. Cal. 2005).

12. An action may be removed if the defendant establishes, by a preponderance of the evidence, that the aggregate amount-in-controversy exceeds the jurisdictional amount. *See Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006); *Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972). To satisfy the preponderance of the evidence test, a defendant must provide evidence that "it is more likely than not" that the amount-in-controversy is satisfied. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). The removing defendant's burden of establishing that the amount in controversy exceeds $75,000 is not daunting and thus does not require the defendant to do extensive research or prove the plaintiff's damages. *See Ray v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 53155, at *16 (C.D. Cal. May 9, 2011).

13.     In determining whether the amount-in-controversy exceeds $75,000, the Court must presume that Plaintiff will prevail on each and every one of his claims.  *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Inc.*, 31 F.3d 1092 (11th Cir. 1994) (the amount-in-controversy analysis presumes that "plaintiff prevails on liability")).

14.     The amount in controversy may include general and special compensatory damages and attorneys' fees which are recoverable by statute.  *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998).

15.     Here, Plaintiff brings the following claims: (1) First Cause of Action for Failure to Provide Meal Periods Violation of Labor Code § 226.7 and 512; (2) Second Cause of Action for Failure to Provide Accurate Itemized Statements in Violation of California Labor Code § 226; (3) Third Cause of Action for Waiting Time Penalties under Labor Code § 201-203 *et seq.*; (4) Fourth Cause of Action for Unfair Competition in Violation of California Business & Professions Code § 17200 *et seq.*; and (5) Fifth Cause of Action for the Private Attorneys' General Act, California Labor Code § 2698 *et seq.*  He also seeks to recover unpaid wages and penalties ,as well as "reasonable attorneys' fees, expenses and costs and any such other and further relief the court may deem just and proper."  *See* Exhibit A (Complaint), Prayer for Relief.

16.     **Penalties for Alleged Failure to Provide Meal Periods.** Plaintiff alleges in his purported First Cause of Action that "Plaintiff and class members were unable to avail themselves of statutory mandated meal periods for various reasons, including but not limited to walk-in customer demands, telephonic customer demands, and other work required/directed to be performed by Defendant and its supervisorial employees.  Despite time records confirming Plaintiff and class members did not receive statutorily mandated meal periods, under no circumstances did BOFA compensate personal bankers an additional hour of pay."  Exhibit A

(Complaint), ¶ 18.  He further alleges that "Defendant's policy/practice of failing to monitor/investigate whether an additional hour of pay was ever owed to personal bankers who were not provided with meal periods is a violation of California law ideally situated for class wide resolution.  *Id.*  Plaintiff also alleges that "Defendants failed to pay and/or ever even monitor/investigate whether Plaintiff and class should have received an additional hour of pay in those instances where a meal period was neither taken nor provided…."  *Id.*, ¶ 21.

17.     Cal. Lab. Code § 226.7(c) provides that "[i]f an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

18.     Plaintiff alleges BANA had a "policy or practice" to not provide meal periods and that he "***regularly*** worked a shift lasting approximately eight hours." Exhibit A (Complaint), ¶ 14 (emph. added).

19.     According to BANA's records, Plaintiff worked for it as a Personal Banker from September 4, 2014 through July 23, 2015, or 46 weeks.  *See also* Exhibit A (Complaint), ¶ 13 (alleging that Plaintiff was "employed by BOFA for approximately 10 months.").  Plaintiff's base hourly rate of pay was at all times $20.67 per hour.  Assuming he was entitled to three meal period premium payments per week, the total amount in controversy for the purported First Cause of Action for meal period penalties is at least $**2,852.46**, calculated as follows:

($20.67 hourly rate) x (3 meal period premiums per week) x (46 weeks worked) = **$2,852.46.**

20.     **Penalties for Alleged Inaccurate Itemized Wage Statements.** Plaintiff alleges in his purported Second Cause of Action that "BOFA does not comply with the requirements of Labor Code Section 226," and asserts that "[b]y failing to provide meal periods by, inter alia, preventing Plaintiff and class members

from taking meal periods and by failing to ever compensate them the extra hour of pay at the regular rate under any circumstances, Defendants violated the requirement that all wages earned be included in the wage statement that must be provided the Plaintiff and class members." Exhibit A (Complaint), ¶23, 24.   As a result, Plaintiff seeks "the greater of actual damages or $50 for the initial pay period in which the violation occurred and $100 for each subsequent violation, up to a maximum of $4,000, pursuant to Labor Code § 226, as well as reasonable attorney's fees and costs of suit." *Id.*, ¶ 25.

21.     Under Labor Code § 226, "the statutory damages provide for $50 per violation for the initial pay period and $100 for each violation in a subsequent pay period." *Garibay v. Archstone Cmtys. LLC*, 2013 U.S. Dist. LEXIS 188299, at *10 (C.D. Cal. Feb. 4, 2013).

22.     As described above, Plaintiff alleges BANA had a "policy or practice" to not provide meal periods and that he "***regularly*** worked a shift lasting approximately eight hours."  Exhibit A (Complaint), ¶ 14 (emph. added).  BANA paid Plaintiff on a biweekly basis (i.e., 26 pay periods per year).  Thus, under Plaintiff's theory, he would be entitled to a penalty for 23 inaccurate itemized wage statements.  Accordingly, the total amount in controversy for Plaintiff's purported Second Cause of Action for inaccurate wage statements is not less than **$2,250** calculated as follows:

($50 penalty for initial pay period violation) + [($100 penalty for subsequent pay period violations) x (22 remaining pay periods)] = **$2,250.**

23.     **Alleged Waiting-Time Penalties**.  In his purported Third Cause of Action,[1] Plaintiff seeks waiting time penalties for alleged failure to pay all wages

---

[1] The caption page of Plaintiff's FAC identifies this claim as the Third Cause of Action, but it is also set forth on page 10 of the FAC as the Fourth Cause of Action.

due upon termination under California Labor Code §203. *See* Exhibit A (Complaint), ¶¶ 37-39. "Labor Code Section 203 states, in pertinent part: 'If an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.' Cal. Lab. Code § 203(b)." *Bell v. Home Depot U.S.A., Inc.*, 2014 U.S. Dist. LEXIS 78353, at *4 (E.D. Cal. June 4, 2014). "The so-called 'waiting time penalty' is 'equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days.'" *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1018 (N.D. Cal. 2010) (*quoting Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998)); *see also Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("[C]ourts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met.").

24.     Assuming Plaintiff was not compensated all wages due him on account of his missed meal periods for the statutory maximum of 30 days, the total amount in controversy for Plaintiff's purported Third Cause of Action for waiting time penalties is not less than **$4,960.80** calculated as follows:

($20.67 hourly rate) x (8 hours) x (30 days) = **$4,960.80.**

25.     **Total Potential Damages and Penalties**. As set forth above, the total amount in controversy for Plaintiff's individual claims for alleged meal period premiums, inaccurate itemized wage statement penalties, and waiting-time penalties, exclusive of attorneys' fees, is not less than **$10,063.26.**

### ATTORNEYS' FEES

26.     Plaintiff also seeks in his FAC an award of attorneys' fees. *See* Exhibit A (Complaint), Prayer, ¶ 6. It is settled in the Ninth Circuit that where attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal. *See Kroske v.*

*U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2001); *Johnson v. America Online, Inc.*, 280 F.Supp.2d 1018 (N.D. Cal. 2003); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").   Although BANA disputes that Plaintiff is entitled to any attorneys' fees in this action, such fees are properly included in the amount-in-controversy where, as here, they are expressly pleaded in the Complaint and provided for by statute.  *See* Labor Code § 226(e)(1).

27.    Given Plaintiff's total potential damages and penalties as described above, to meet the $75,000 jurisdictional threshold, there would only have to be $64,936.74 in attorneys' fees at issue.   There can be no reasonable dispute that, through trial and judgment in this matter, Plaintiff will claim well in excess of that amount in attorneys' fees.  *See, e.g.*, *Pellegrino v. Robert Half Int'l*, 182 Cal. App. 4th 278 (Cal. Ct. App. 2010) (in action against employer for violations of wage and hour provisions of Labor Code and for unfair competition that proceeded to trial, the court reversed part of the trial court's judgment, but affirmed the award of $558,926 in attorneys' fees); *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 WL 1526441, at *4 (N.D. Cal. Apr. 15, 2010) ("As defendant notes, at a rate of $400/hour, attorneys' fees would reach $40,000 after just 100 billable hours, and attorneys handling wage-and-hour cases typically spend far more than 100 hours on the case.") (citing, *inter alia*, *Martin v. The Old Turner Inn*, 2003 WL 22998402 (Cal. Super. Ct. 2003) (awarding $147,610 in attorneys' fees and costs in a single-plaintiff wage and hour case in which the plaintiff recovered $49,508 in compensatory and punitive damages)); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (Cal. Ct. App. 2008) (affirming trial court's award of $1,199,550 in attorneys' fees in an action for, *inter alia*, PAGA penalties).   The Court's own knowledge and experience in ruling on prevailing plaintiffs' motions for attorneys' fees in actions asserting employment-related claims based on alleged violations of

10

1  the California Labor Code should indicate that it is "more likely than not" that
2  Plaintiff will be seeking an attorneys' fees award of at least **$150,000** if this case is
3  litigated to judgment through a trial.  BANA reasonably estimates at this juncture
4  that its own attorneys' fees to defend this action through a trial will be over
5  $150,000 based on its own past litigation experience.

6                    **IV.   <u>CLASS ACTION REMOVAL UNDER CAFA</u>**

7         28.    In addition, or in the alternative, this Court also has jurisdiction over
8  this matter under the Class Action Fairness Act of 2005 ("CAFA"), pursuant to 28
9  U.S.C. §§ 1332 and 1441.   Under CAFA, this Court has jurisdiction over class
10 actions where any member of the class is a citizen of a State different from
11 defendant, and where the aggregate amount in controversy exceeds the sum of
12 $5,000,000, exclusive of interest and costs, and the number of members of all
13 proposed plaintiff classes in the aggregate is at least 100 class members.  *See* 28
14 U.S.C. § 1332(d)(2)-(6); *see also Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 680
15 (9th Cir. 2006) (noting that CAFA "vests the district court with 'original jurisdiction
16 of any civil action in which the matter in controversy exceeds the sum or value of
17 $5,000,000, exclusive of interest and costs, and is a class action in which' the parties
18 satisfy, among other requirements, minimal diversity") (quoting 28 U.S.C. §
19 1332(d)(2)).   CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

20        29.    CAFA applies to "class actions," which the statute defines as "any
21 civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar
22 State statute or rule of judicial procedure authorizing an action to be brought by 1 or
23 more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

24                     **A.   DIVERSITY OF CITIZENSHIP**

25       30.    **Plaintiff's Citizenship.**  *See* paragraph 7, *supra*.

26       31.    **Bank of America, N.A.'s Citizenship.**  *See* paragraph 8, *supra*.

27       32.    **Doe Defendants.**  *See* paragraph 9, *supra*.

28       33.    Accordingly, the diversity of citizenship between Plaintiff (California)

72780457.2
                                   11

1    and BANA (North Carolina) establishes sufficient basis for removal of this action

2    under CAFA.

3          **B.     NUMBER OF PUTATIVE CLASS MEMBERS**

4          34.    Plaintiff purports to bring this action on his own behalf, as well as on

5    behalf of himself as well as the following persons:

6          All current and former hourly paid personal bankers who, at any time
           within four years preceding the filing of this case to the present, worked
7          in the State of California and were not paid one hour of pay at their
           regular rate of pay for shifts where timekeeping and payroll records
8          show timely meal periods of at least 30 minutes were not provided
           pursuant to the requirements of Labor Code 226.7.
9

10   Exhibit A, Complaint, ¶2.

11         35.    He claims that "[t]he persons on whose behalf Plaintiff brings this case

12   are so numerous that joinder of all such persons is impracticable and the disposition

13   of their claims will benefit the parties and the Court." *Id.*, ¶9.   He further alleges

14   that "Membership in the class is so numerous that it would not be practical to bring

15   all members of the class before the court." *Id.*, ¶ 10, c).

16         36.    From September 21, 2011 (four years prior to the filing of the initial

17   Complaint) to November 6, 2015, BANA employed at least 4,808 unique

18   individuals holding the job title of personal banker in California. *See* Bush Decl.,

19   ¶2.

20         37.    Thus, the aggregate potential membership of the putative class is at

21   least 4,808, which is well in excess of the 100 as required under CAFA.

22   **C.    TOTAL AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION**

23         38.    Plaintiff does not allege a specific amount in controversy.  Thus, the

24   Court must consider as evidence of the amount in controversy that which is "facially

25   apparent" on the Complaint.  *See, e.g., Rippee v. Boston Market Corp.*, 408 F. Supp.

26   2d 982, 984 (S.D. Cal. 2005).  If the amount in controversy is unclear or ambiguous

27   from the face of the complaint, a removing defendant must only satisfy the

28   "preponderance of the evidence standard," *Rodriguez v. AT & T Mobility Servs.*

*LLC*, 728 F.3d 975, 977 (9th Cir. 2013), *i.e.*, that "it is more likely than not" that the amount in controversy is satisfied. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)).

39.     The claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6).  In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. Rep. 109-14, at 42.  Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

40.     BANA's proffer of the amount-in-controversy, as set forth herein, is based on an assumption for purposes of removal only that the allegations of Plaintiff's Complaint regarding his theories of liability are true but without any type of express or implied admission that any such liability in fact exists, or that Plaintiff can properly assert his claims on a class-wide basis.

41.     Plaintiff asserts five causes of action against BANA based on his allegation that "Plaintiff and other personal bankers were prevented from receiving

and/or not provided timely meal periods due to inadequate staffing, excessive customers and BOFA's insistence of taking care of the customer first." Exhibit A (Complaint), ¶ 14.  Plaintiff seeks the following relief: (1) an unspecified amount of "unpaid wages and for all applicable penalties" for his First Cause of Action for Failure to Provide Meal Periods Violation of Labor Code § 226.7 and 512; (2) "all applicable wages and/or penalties" for his Second Cause of Action for Failure to Provide Accurate Itemized Statements in Violation of California Labor Code § 226; (3) "restitution and injunctive relief" for his Third Cause of Action for Waiting Time Penalties under Labor Code § 201-203 *et seq.*; (4) "compensation according to proof and less appropriate offsets pursuant to California Labor Code § 203" for his Fourth Cause of Action for Unfair Competition in Violation of California Business & Professions Code § 17200 *et seq.*; (5) "penalties pursuant to the PAGA" for his Fifth Cause of Action for the Private Attorneys' General Act, California Labor Code § 2698 *et seq.*; and (6) "reasonable attorneys' fees, expenses and costs and any such other and further relief the court may deem just and proper."  *See* Exhibit A (Complaint), Prayer for Relief.

42.   In sum, Plaintiff seeks damages for, *inter alia,* failure to provide meal periods, inaccurate written wage statements, waiting time penalties, PAGA penalties, restitution and attorneys' fees.  *See* Exhibit A (Complaint), ¶¶ 9-43, Prayer for Relief.

43.   While BANA denies any liability as to Plaintiff's claims, based on the allegations, claims, and prayer for relief set forth in the Complaint, the amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $5,000,000.

44.   For purposes of this Notice of Removal, the timekeeping and payroll data for the putative classes defined by Plaintiff, which are used to determine the CAFA amount-in-controversy, can be summarized as follows:

a. From September 21, 2011 to November 6, 2015,[2] BANA employed at least 4,808 unique individuals holding the job title of "Personal Banker" in California.  These employees worked a total of 307,527 workweeks, or an average of 64 workweeks each (307,527 ÷ 4,808), and earned an average hourly rate of $19.96/hour.

b. From September 21, 2012 to August 28, 2015, there were 1,490 termination events (voluntary or involuntary) for unique individuals employed as "Personal Bankers" in California.  The average hourly rate for these former employees was $19.55.

c. From September 21, 2014 to November 6, 2015, BANA employed at least 3,312 unique individuals holding the job title of "Personal Banker."  Between September 21, 2014 and November 6, 2015, these employees worked a total of 67,923 pay periods, or an average of 20.5 pay periods each.

*See* Bush Decl., ¶¶ 2-4.

45.    **Penalties for Alleged Failure to Provide Meal Periods.** Plaintiff alleges in his purported First Cause of Action that "Plaintiff and class members were unable to avail themselves of statutory mandated meal periods for various reasons, including but not limited to walk-in customer demands, telephonic customer demands, and other work required/directed to be performed by Defendant and its supervisorial employees.  Despite time records confirming Plaintiff and class members did not receive statutorily mandated meal periods, under no circumstances did BOFA compensate personal bankers an additional hour of pay."  Exhibit A (Complaint), ¶ 18.  He further alleges that "Defendant's policy/practice of failing to

---

[2] At the time of this Notice of Removal, BANA's timekeeping and payroll data readily available for the calculations provided herein extended only through November 6, 2015.  As such, the amount-in-controversy estimates are actually understated.

monitor/investigate whether an additional hour of pay was ever owed to personal bankers who were not provided with meal periods is a violation of California law ideally situated for class wide resolution. *Id.* Plaintiff also alleges that "Defendants failed to pay and/or ever even monitor/investigate whether Plaintiff and class should have received an additional hour of pay in those instances where a meal period was neither taken nor provided…." *Id.*, ¶ 21.

46.    Cal. Lab. Code § 226.7(c) provides that "[i]f an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

47.    From September 21, 2011 to November 6, 2015, BANA employed at least 4,808 unique individuals holding the job title of personal banker in California. *See* Bush Decl., ¶2. These employees worked a total of 307,527 workweeks, or an average of 64 workweeks each (307,527 ÷ 4,808), at an average hourly rate of $19.96 per hour. *See* Bush Decl., ¶ 2.

48.    Assuming for purposes of this Notice of Removal that only **half** of the total number of Personal Bankers suffered just **one** meal period violation for **half** of the average number of total workweeks per Personal Banker, the total amount in controversy for the purported First Cause of Action for meal period penalties is at least $**1,535,482.88**, calculated as follows:

(2,404 Personal Bankers) x (32 workweeks) x (1 alleged meal period violation per week) x ($19.96 average hourly rate of pay) = $**1,535,482.88.**

This is a **conservative estimate** in light of Plaintiff's allegation of a "policy or practice" to not provide meal periods and his allegation that "Plaintiff **regularly** worked a shift lasting approximately eight hours. During these shifts, it was not uncommon that Plaintiff and other personal bankers were prevented from receiving and/or not provided timely meal periods due to inadequate staffing, excessive

customers and BOFA's insistence on taking care of the customer first," *see* Exhibit A (Complaint), ¶ 14 (emph. added).

49.    **Penalties for Alleged Inaccurate Itemized Wage Statements.** Plaintiff alleges in his purported Second Cause of Action that "BOFA does not comply with the requirements of Labor Code Section 226," and asserts that "[b]y failing to provide meal periods by, inter alia, preventing Plaintiff and class members from taking meal periods and by failing to ever compensate them the extra hour of pay at the regular rate under any circumstances, Defendants violated the requirement that all wages earned be included in the wage statement that must be provided the Plaintiff and class members." Exhibit A (Complaint), ¶¶23, 24.   As a result, Plaintiff seeks "the greater of actual damages or $50 for the initial pay period in which the violation occurred and $100 for each subsequent violation, up to a maximum of $4,000, pursuant to <u>Labor Code</u> § 226, as well as reasonable attorney's fees and costs of suit." *Id.*, ¶ 25.

50.    Under Labor Code § 226, "the statutory damages provide for $50 per violation for the initial pay period and $100 for each violation in a subsequent pay period." *Garibay v. Archstone Cmtys. LLC*, 2013 U.S. Dist. LEXIS 188299, at *10 (C.D. Cal. Feb. 4, 2013).

51.    Between September 21, 2014 (one year prior to the filing of the Complaint) and November 6, 2015, 3,312 Personal Bankers worked a total of 67,923 pay periods, or an average of 20.5 pay periods each (67,923 pay periods ÷ 3,312 personal bankers).  *See* Bush Decl., ¶ 4.

52.    Assuming for purposes of this Notice of Removal only that only ***half*** of the putative class members received inaccurate wage statements by virtue of not receiving a meal period premium during the one-year period prior to the filing of the Complaint, for ***half*** of the pay periods during that time period, the total amount in controversy for the purported Second Cause of Action for itemized wage statement penalties is estimated at **$6,624,000**, calculated as follows:

[$50 (initial penalty) x 1,656 Personal Bankers = $82,800] + [$100 (subsequent penalty) x 1,656 Personal Bankers x 10 pay periods after initial violation = $1,656,000] = **$1,738,800**.

53. **Alleged Waiting-Time Penalties**. In his purported Third Cause of Action,[3] Plaintiff seeks waiting time penalties for alleged failure to pay all wages due upon termination under California Labor Code §203. *See* Exhibit A (Complaint), ¶¶ 37-39. "Labor Code Section 203 states, in pertinent part: 'If an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.' Cal. Lab. Code § 203(b)." *Bell v. Home Depot U.S.A., Inc.*, 2014 U.S. Dist. LEXIS 78353, at *4 (E.D. Cal. June 4, 2014). "The so-called 'waiting time penalty' is 'equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days.'" *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1018 (N.D. Cal. 2010) (*quoting Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998)); *see also Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("[C]ourts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met.").

54. Between September 21, 2012 (three years before the date the Complaint was filed) and August 28, 2015, there were 1,490 termination events (voluntary or involuntary terminations) for unique individuals employed as "Personal Bankers" in California. *See* Bush Decl., ¶3. These employees were earning an average hourly rate of $19.55 at the time of their termination. *Id.*

---

[3] The caption page of Plaintiff's FAC identifies this claim as the Third Cause of Action, but it is also set forth on page 10 of the FAC as the Fourth Cause of Action.

55.     Using the average hourly rate in effect for only *half* of the former Personal Bankers at the time of their respective terminations who terminated during the relevant time period, and assuming that they will each seek only *half* of the maximum penalties (i.e., 15 days instead of 30 days), the potential waiting time penalties is estimated at **$1,747,770** as follows:

($19.55 average hourly rate) x (8 hours) x (15 days) x (745 terminated employees) = **$1,747,770.**

56.     **Total Potential Damages and Penalties**.  As set forth above, the total amount in controversy for alleged meal period premiums, inaccurate itemized wage statement penalties, and waiting-time penalties, exclusive of attorneys' fees, is conservatively no less than:

**$1,535,483 Meal Period Premiums**

**$1,738,800 Wage Statement Penalties**

**$1,747,770 Waiting-Time Penalties**

**$5,022,053 Total**

## ATTORNEYS FEES

57.     Although the conservative amount described above exceeds CAFA's jurisdictional minimum, Plaintiff's Complaint also seeks an award of attorneys' fees.  *See* Exhibit A (Complaint), Prayer.  It is settled in the Ninth Circuit that where attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal.  *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2001); *Johnson v. America Online, Inc.*, 280 F.Supp.2d 1018 (N.D. Cal. 2003); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").   Further, subsection (g) of PAGA states that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Lab. Code § 2699(g).

58.     Where, as here, a common fund recovery is sought, the Ninth Circuit uses a benchmark rate of 25% of the potential award as an estimate for attorneys' fees.  Applying this benchmark to the conservative amount in controversy described above, the total amount of attorneys' fees in controversy is no less than **$1,255,513.25.**

### D.     TOTAL AMOUNT IN CONTROVERSY

59.     Based on the foregoing calculations, the total amount in controversy in this action for CAFA removal jurisdiction purposes is not less than **$6,277,566.25.**

60.     Because (a) the aggregate membership in the putative class is at least 100 members, (b) diversity of citizenship exists between the parties, and (c) the aggregate amount in controversy exceeds $5,000,000, this Court has jurisdiction over this matter under CAFA.

### VENUE

61.     Venue lies in this Court because Plaintiff's action was originally filed and is pending in this district and division.  *See* 28 U.S.C. § 1441(a).

62.     Nothing in this Notice of Removal is intended or should be construed as any type of express or implied admission by BANA of any fact, of the validity or merits of any of Plaintiff's claims, causes of action, and allegations, or of any liability for the same, all of which is/are hereby expressly denied, or as any type of express or implied waiver or limitation of any of BANA's rights, claims, remedies, and defenses in connection with this action, all of which are hereby fully and expressly reserved.  Further, BANA expressly reserves its right to amend or supplement this Notice of Removal and the evidence in support thereof to the fullest extent permitted by applicable law.

WHEREFORE, BANA requests that the above-captioned action now pending in the State Court be removed to this United States District Court.

1

2    DATED: November 25, 2015          MCGUIREWOODS LLP

3

4                                      By:  /s/ Michael D. Mandel
                                            Michael D. Mandel, Esq.
5                                           Bethany A. Pelliconi, Esq.
                                            Brian D. Fahy, Esq.
6
                                       Attorneys for Defendant
7                                      BANK OF AMERICA, N.A.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

72780457.2

NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 8th Floor, Los Angeles, CA 90067.

On November 25, 2015, I served the following document described as **DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Matthew Righetti
John Glugoski
Michael Righetti
RIGHETTI GLUGOSKI, P.C.
456 Montgomery Street, Suite 1400
San Francisco, CA 94104
Tel: (415) 983-0900

☒ **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business.  Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business practices.  (C.C.P. § 1013 (a) and 1013a(3))

☐ **BY FACSIMILE:**  At approximately _____, I caused said document(s) to be transmitted by facsimile pursuant to Rule 2008 of the California Rules of Court.  The telephone number of the sending facsimile machine was 310.315.8210.  The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list.  The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

☐ **BY OVERNIGHT DELIVERY:**  I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder.  (C.C.P. § 1013(d)(e))

☐ **BY PERSONAL SERVICE:**  I caused such envelope(s) to be delivered the addressee(s).  (C.C.P. § 1011)

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 25, 2015, at Los Angeles, CA.

_____
Matthew Whitney

72780457.2

22