UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-9171 PSG (JPRx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Anton Belevich v. Bank of America National Assoc., *et al.* | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** Order DENYING Plaintiff's Motion to Remand

Before the Court is Plaintiff Anton Belevich's ("Plaintiff") motion to remand. Dkt. # 17. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. After considering the moving, opposing and reply papers, the Court DENIES the motion to remand.

I.   Background

Plaintiff was formerly employed as a personal banker by Defendant Bank of America National Association ("Defendant"). Dkt. # 1-1, *First Amended Complaint* ["FAC"] ¶ 1. Plaintiff claims that Defendant violated the California Labor Code by denying him statutorily-mandated meal periods during the course of his employment. *Id.* Plaintiff further asserts that for each missed meal period, Defendant illegally failed to pay him at his regular rate of pay. *Id.* As a result, Plaintiff alleges that he was denied wages, meal periods, accurate itemized wage statements and waiting time penalties upon separation of employment. *Id.*

Plaintiff filed a class action complaint ("Complaint") on September 21, 2015. *See* Dkt. # 1, *Notice of Removal* ["NOR"] ¶ 1. On October 23, 2015 Plaintiff filed an FAC on behalf of

> [a]ll current and former hourly paid personal bankers who, at any time within the four years preceding the filing of this case to the present, worked in the State of California and were not paid one hour of pay at their regular rate of pay for shifts where timekeeping and payroll records show timely meal periods of at least 30 minutes were not provided pursuant to the requirements of Labor Code 226.7.

FAC ¶ 2. The FAC includes causes of action for: "(1) Failure to Provide Meal Periods in Violation of Cal. Lab. Code Sections 226.7 and 512; (2) Failure to Provide Accurate Itemized Statements in Violation of Cal. Lab. Code Section 226; (3) Waiting Time Penalties Pursuant to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-9171 PSG (JPRx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Anton Belevich v. Bank of America National Assoc., *et al.* | | |

Cal. Lab. Code Section 201-203, *et seq*; (4) Unfair Competition in Violation of Cal. Bus. & Prof. Code Section 17200, *et seq.*; and (5) Penalties Pursuant to the Private Attorneys' General Act, Cal. Lab. Code Section 2698, *et seq.* NOR.

Defendant removed the case to this Court on November 25, 2015, asserting jurisdiction on the basis of both complete diversity and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). *See id.* ¶ 28. Plaintiff filed this motion to remand on January 4, 2016. Dkt. # 17.

II.   Legal Standard

Federal courts are of limited jurisdiction and possess only that jurisdiction as authorized by the Constitution and federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove a civil action filed in state court if the action could have originally been filed in federal court. 28 U.S.C. § 1441. A plaintiff may seek to remand the case to the state court from which it came if the district court lacks subject matter jurisdiction or if there is a defect in the removal procedure. 28 U.S.C. § 1447(c). CAFA grants district courts original jurisdiction over any class action in which (1) the amount in controversy exceeds $5 million; (2) any plaintiff class member is a citizen of a state different from any defendant; and (3) the number of plaintiffs in the putative class is at least 100. *See* 28 U.S.C. § 1332(d). "[N]o antiremoval presumption attends cases involving CAFA." *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)).

Under CAFA, the burden of establishing removal jurisdiction remains on the party seeking removal. *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). "[A] defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197–98 (9th Cir. 2015). If the plaintiff challenges the amount in controversy, the defendant must submit summary judgment-style evidence establishing the amount by preponderance of the evidence. *Id.* Plaintiffs can also submit evidence in opposition, *see id.* at 1198, but there is no requirement that they do so. *See Townsend v. Brinderson Corp.*, No. CV 14-5320 FMO (RZx), 2015 WL 3970172, at *3 (C.D. Cal. June 30, 2015); *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890 GHK (JCx), 2015 WL 2452755, at *2 (C.D. Cal. May 21, 2015).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-9171 PSG (JPRx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Anton Belevich v. Bank of America National Assoc., *et al.* | | |

III.  Discussion

Defendant bases removal on both CAFA and complete diversity. *See NOR.* Because the Court finds that CAFA jurisdiction exists, it does not address the parties' arguments regarding diversity jurisdiction.

The parties do not dispute that the second and third requirements of CAFA are met; the sole point of contention is whether the amount in controversy exceeds $5 million. Plaintiff does not allege an amount in controversy in the FAC and challenges the figures submitted by Defendant in the NOR. Defendant therefore has the burden of proving, through summary judgment-style evidence, that it is more likely than not that the amount in controversy exceeds $5 million. *See Ibarra*, 775 F.3d at 1197-98; *Abrego*, 443 F.3d at 683 (preponderance of the evidence is a "more likely than not" standard).

    A.    Defendant's Calculations

Defendant estimates that based on the claims for meal period premiums, wage statement penalties, and waiting time penalties alone, the amount in controversy is $5,022,053. *NOR* ¶ 56. Of that sum, Defendant attributes $1,535,483 to liability for meal period premiums, $1,738,800 to wage statement penalties, and $1,747,770 to waiting-time penalties ($1,535,483 + $1,738,800 + $1,747,770 = $5,022,053). *Id.* ¶ 56. Defendant also estimates projected attorneys' fees at $1,255,513.25, putting the potential class recovery at $6,277,566.25 ($5,022,053 + $1,255,513.25). *NOR* ¶ 58, 59. Because the Court finds that Defendant has met its burden of demonstrating that the amount in controversy exceeds $5 million solely based on the claims for meal period premium, wage statement penalties, and waiting time penalties, it does not address attorneys' fees.

        *i.*    *Meal Periods*

Under the California Labor Code, an employer must provide its employees with a 30-minute, uninterrupted meal break every five-hour increment of time worked. Cal. Lab. Code § 512. For every meal break an employer fails to provide, the employer must reimburse the employee for one additional hour of pay, at the employee's regular rate of compensation, for each workday that the meal or rest or recovery period is not provided. Cal. Lab. Code § 226.7. Plaintiff alleges that class members "regularly worked in excess of five hours per shift," that payroll records "confirm instances where Plaintiff and the members of the class did not receive statutorily mandated meal breaks during shifts," that it was "not uncommon that Plaintiff and other personal bankers were prevented from receiving and/or not provided timely meal periods due to inadequate staffing," and that "under no circumstances did [Defendant] compensate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-9171 PSG (JPRx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Anton Belevich v. Bank of America National Assoc., *et al.* | | |

personal bankers an additional hour of pay." *Compl.* ¶¶ 14, 18-19. Plaintiff further asserts that Defendant has a "policy/practice of failing to monitor/investigate whether an additional hour of pay was ever owed to personal bankers who were not provided with meal breaks[.]" *Id.* Plaintiff also states that Defendant's meal period violations were willful. *Id.* ¶ 21.

Defendant states that the amount in controversy for this claim is $1,535,482.88. *NOR.* ¶ 48. Defendant submits evidence that from September 21, 2011 to November 6, 2015, Defendant employed at least 4,808 individuals holding the job title of personal banker in California. *Id.* ¶ 47; Dkt. # 5, *Declaration of Joseph Bush ISO Removal* ["Bush Decl."] ¶ 2. These employees worked a total of 307,527 workweeks, or an average of 64 workweeks each (307,527/4,808 = 64), at an average hourly rate of $19.96 per hour. *Bush Decl.* ¶ 2. Defendant asserts that if half of the total number of personal bankers employed during that period suffered one meal period violation per week for only half of the weeks he or she worked, the total amount in controversy for the meal period claim alone would be $1,535,482.88, calculated as follows: (2,404 bankers) x (32 workweeks) x (1 meal period violation per week) x ($19.96 average hourly pay) = $1,535,482.88. *NOR* ¶ 48.

        *ii.*    *Inaccurate Itemized Wage Statements*

The California Labor Code also requires employers to furnish each employee with an itemized wage statement, either semimonthly or at the time of each payment of wages, which accurately reflects net wages earned. Cal. Lab. Code § 226. Plaintiff alleges that Defendant's wage statements did not reflect the wages he and the putative class members earned because the wages they earned consisted of meal periods for which they were not compensated. *Compl.* ¶ 24. Plaintiff asserts that he and the putative class are entitled to payment "for the greater of actual damages or $50 for the initial pay period in which the violation occurred and $100 for each subsequent violation, up to a maximum of $4,000[.]" *Id.* ¶ 25; *see* Cal. Lab. Code § 226(e)(1).

Defendant asserts that between September 21, 2014 (one year prior to Plaintiff filing the Complaint) and November 6, 2015, 3,312 personal bankers worked a total of 67,923 pay periods, or an average of 20.5 pay periods each (67,923/3,312 = 20.5).[1] *NOR* ¶ 51; *Bush Decl.* ¶ 4. Defendant reasons that if half the putative class members received inaccurate wage statements by virtue of not receiving a meal period premium for half of the pay periods during that time, the total amount in controversy for inaccurate itemized wage statements would be

---

[1] Presumably, Defendant uses that time period because Plaintiff filed his Complaint on September 21, 2015. Cal. Labor Code § 226 carries a one-year statute of limitations measured from the date of filing, so Defendant would only be liable for violations occurring after September 21, 2014. *See Falk v. Children's Hosp. Los Angeles*, 237 Cal.App.4th 1454 (2015).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-9171 PSG (JPRx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Anton Belevich v. Bank of America National Assoc., *et al.* | | |

$1,738,800, calculated as follows: ($50 initial penalty x 1,656 personal bankers = $82,800) + ($100 subsequent penalty x 1,656 personal bankers x 10 pay periods after the initial violation = $1,656,000) = $1,738,800.  *NOR* ¶ 52.

       *iii.*      *Alleged Waiting Time Penalties*

The California Labor Code also provides that where an employer "willfully fails to pay…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Lab. Code § 203(a).  "The so-called waiting time penalty is equivalent to the employee's daily wages for each day he or she remained unpaid, up to a total of 30 days."  *Drumm v. Morningstar, Inc.*, 695 F.Supp.2d 1014, 1018 (N.D. Cal. 2010) (citations and internal quotation marks omitted).

Plaintiff alleges that he and "class members who ceased employment with [Defendant] are entitled to all of their unpaid wages, but to date have not received such compensation."  *Compl.* ¶ 39.  Plaintiff also claims that as a result of Defendant's willful failure to pay putative class members their missed meal period wages, "Plaintiff and class members whose employment ended during the class period are entitled to up to 30 days' wages[.]"  *Id.* ¶ 40.  Defendant provides evidence regarding termination events which occurred between September 21, 2012 and August 28, 2015.[2]  *NOR* ¶ 54.  During that time, there were 1,490 termination events, either voluntary or involuntary, for personal bankers in California.[3]  *NOR* ¶ 54; *Bush Decl.* ¶ 3.  Those employees were earning an average of $19.55 per hour.  *Id.*  Defendant reasons that if half the former personal bankers who left their employment during the relevant time period sought only half the maximum penalties the potential waiting time penalties would be $1,747,770, calculated as follows: ($19.55 average hourly rate) x (8 hours per day) x (15 days) x (745 employees) = $1,747,770.  *NOR* ¶ 55.

---

[2] Presumably, Defendant bases its calculations on termination events since September 21, 2012 because waiting time penalties carry a three-year statute of limitations.  *See Chang v. Biosuccess Biotech Co., Ltd.*, 76 F.Supp.3d 1022, 1052 (C.D. Cal. 2014).  Defendant is therefore liable only for waiting time penalties accrued in the three years prior to Plaintiff filing the Complaint.

[3] Defendant explains that from September 21, 2012 to August 28, 2015 there were actually 1,864 termination events among personal bankers in California.  However, 374 of those events arose from individuals who released their waiting time claims pursuant to another class action settlement or severance agreements.  Dkt. # 22-2, *Supplemental Declaration of Joe Bush* ["Supp. Bush Decl."] ¶ 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-9171 PSG (JPRx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Anton Belevich v. Bank of America National Assoc., *et al.* | | |

  Even without factoring in attorneys' fees or PAGA penalties, Defendant calculates the amount in controversy from Plaintiff's meal period, inaccurate wage statement, and waiting time penalties to be $5,022,053 ($1,535,483 + $1,738,800 + $1,747,770).

  B.  <u>Plaintiff's Challenges to Amount in Controversy</u>

  Plaintiff argues that Defendant has not met its burden of establishing that the amount in controversy more than likely exceeds $5 million. First, Plaintiff argues that Defendant provides no summary judgment-type evidence to support its amount in controversy analysis. *Mot.* 11. Plaintiff is incorrect. Defendant submitted evidence in the form of two declarations from Joseph Bush, a Vice President of Human Resources Reporting and Analytics. Bush provides numbers from his personal knowledge and his review of Defendant's personnel and payroll records. *See Bush Decl.* ¶ 1. Defendant's reliance on a declaration from a person with knowledge of the relevant data is an appropriate form of evidence. *See Ibarra*, 775 F.3d at 1197 ("The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal.") (internal quotation marks omitted). Plaintiff does not contest that Bush has knowledge of Defendant's employment records. Bush is therefore capable of attesting to the number of personal tellers working at a given time, how many weeks each of those tellers worked for during the relevant time periods, and their average rate of pay. *See Amaya v. Consol. Container Co., LP*, No. 2:15-cv-03369-SVW-PLA, 2015 WL 4574909, at *2 (C.D. Cal. July 28, 2015) (declaration of chief human resources officer regarding number of employees who worked during the relevant period, the number of weeks they worked, and their average wage during each period was sufficient evidence in lieu of underlying records); *see also Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *3 (C.D. Cal. Jan. 7, 2015) (same).

  Next, Plaintiff challenges Defendant's use of "assumptions and rank speculation" regarding the number of potential meal period violations, wage statement penalties and waiting time penalties. *Mot.* 9. However, courts routinely approve the use of "reasonable, conservative estimates about the frequency of…alleged violations based on the language used in the complaint" where a defendant has "produced summary judgment-type evidence about those facts which are within its knowledge – such as the exact size of the putative class, their dates of employment, each employee's salary or wage, and the number of hours worked[.]" *Herrera v. Carmax Auto Superstores California*, No. EDCV-14-776-MWF (VBKx) at 3-4 (C.D. Cal. June 12, 2014); *Behrazfar v. Unisys Corp.*, 687 F.Supp.2d 999, 1004 (C.D. Cal. 2009); *Ray v. Wells Fargo Bank N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011).[4]

---

[4] Plaintiff argues that "by crediting speculative estimates of the amount in controversy…the cases relied upon by [Defendant] ignore the 'strong presumption' against removal jurisdiction."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-9171 PSG (JPRx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Anton Belevich v. Bank of America National Assoc., *et al.* | | |

For example, in *Herrera*, the plaintiffs alleged that defendant "routinely" denied meal and rest breaks to members of the putative class, and that the defendant was liable for inaccurate wage statements because no non-productive hours were ever paid. *Herrera*, EDCV-14-776-MWF at 8, 10. Defendant removed pursuant to CAFA. *Id.* at 1. In calculating the amount in controversy, defendant estimated one meal break violation and one rest break violation per week per class member. *Id.* at 10. The court found that estimate to be reasonable and conservative, given the allegation that denials were "routine." *Id.* The court also found that because the complaint alleged that Defendant had not paid any non-productive hours, it was highly likely that each wage statement would contain at least one violation. *Id.* at 8. Defendant therefore properly assumed a 100% violation rate for the inaccurate wage statements claim. *Id.*

Here, Plaintiff alleges that class members "regularly worked in excess of five hour shifts" and generally "did not receive statutorily mandated meal breaks." Plaintiff further alleges that defendant had a "policy/practice of failing to monitor/investigate whether an additional hour of pay was ever owed," and that "under no circumstances did [Defendant] compensate personal bankers an additional hour of pay." *Compl.* ¶¶ 14, 18-19. Like in Herrera, Defendant estimates only one meal period violation per week. However, Defendant's estimates are even more conservative than those in *Herrera*. Defendant estimates that violations occurred only with respect to half of the personal bankers employed during the relevant periods, and even then occurred only every other week. Likewise, Defendant assumes that only half the personal bankers received inaccurate wage statements. Defendant's calculations are conservative and reasonable in light of the allegations contained in the FAC. *See Sanchez v. The Ritz Carlton,* No. CV15-3484 PSG (PJWx), 2015 WL 4919972, at *4 (C.D. Cal. Aug. 17, 2015) (assumption that each employee missed one meal every other week was reasonable where complaint "generally alleged that plaintiffs and other class members were not provided with meal or rest breaks"); *see also Coleman v. Estes Express Lines, Inc.*, 730 F.Supp.2d 1141, 1149 (C.D. Cal. 2010) (reasonable to assume one missed meal period per day per class member where complaint did not specify frequency); *see also Alvarez v. Ltd. Express, LLC*, No. 07CV1051 IEG (NLS), 2007 WL 2317125, at *3-4 (S.D. Cal. Aug. 8, 2007) (permitting defendant to assume a 100% violation rate for meal and rest period violations where the complaint did not specify frequency); *cf. Roth v. Comerica Bank*, 799 F.Supp.2d 1107, 1126 (C.D. Cal. 2010) (holding that defendants had not "adduced evidence that would permit the court to draw an inference that [the] violations occurred with the frequency defendants presume" where defendant estimated that every class member was denied meal and rest periods one to three times every week).

---

*Mot.* 11. Plaintiff ignores the well-established principle that "no antiremoval presumption attends cases involving CAFA." *Jordan*, 781 F.3d at 1183 (quoting *Dart Cherokee*, 135 S. Ct. at 554).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-9171 PSG (JPRx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Anton Belevich v. Bank of America National Assoc., *et al.* | | |

Plaintiff also challenges Defendant's assumption that it is liable for heightened waiting time penalties. *Mot.* 15-16. Plaintiff states that under California law, "employers are not subject to heightened penalties for subsequent violations unless and until a court or commissioner notifies the employer that it is in violation of the Labor Code." *Id.* at 15 (quoting *Trang v. Turbine Engine Components Tech. Co.*, No. CV12-07658 DDP (RZx), 2012 WL 6618854, at *5 (C.D. Cal. Dec. 19, 2012)). Plaintiff may be correct, but amount in controversy is determined by "what the plaintiff has alleged, not what the defendant[] will owe." *Coleman*, 730 F.Supp.2d at 1148. Here, the FAC expressly states that the putative class is entitled to payment "for the greater of actual damages or $50 for the initial pay period in which the violation occurred and $100 for each subsequent violation, up to a maximum of $4,000[.]" *Id.* ¶ 25. Defendant was entitled to rely on the FAC in calculating amount in controversy at the time of removal. Plaintiff urges Defendant to admit that it was "put on notice that it has been providing inaccurate wage statements" in order to justify using the heightened penalty, but Defendant "need not prove the merits of Plaintiff's case." *Mot.* 16; *Oda*, 2015 WL 93335 at *3.

Finally, Plaintiff attacks Defendant's estimated amount in controversy for waiting time penalties on the basis that Defendant artificially inflated the number of putative class members entitled to recover those penalties. Plaintiff argues that in a previous class action, a number of personal bankers who had terminating events up until June 30, 2013 released their waiting time claims.[5] *Mot.* 13. Plaintiff therefore argues that many of the putative class members here – specifically, those who had terminating events between September 21, 2012 and June 30, 2013 – would not be entitled to recover waiting time penalties. *Mot.* 13. Plaintiff's concern is unwarranted in light of Defendant's evidence. In calculating amount in controversy for waiting time penalties, Defendant excluded termination events involving persons who released their claims, either through severance agreements or as part of the class action settlement to which Plaintiff refers. *Supp. Bush Decl.* ¶ 2.

The Court therefore finds that Defendant has used reasonable, conservative estimates and summary judgment-type evidence to show by a preponderance of the evidence that even without accounting for attorneys' fees, the amount in controversy exceeds $5 million.

IV.   Conclusion

For the foregoing reasons, Plaintiff's motion to remand is DENIED.

**IT IS SO ORDERED**

---

[5] The class action is *Pineda v. Bank of America, N.A.*, 40 Cal.4th 1389 (2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-9171 PSG (JPRx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Anton Belevich v. Bank of America National Assoc., *et al.* | | |