Matthew Righetti (SBN 121012)
John Glugoski (SBN 191551)
Michael Righetti (SBN 258541)
**RIGHETTI GLUGOSKI, P.C.**
456 Montgomery Street, Suite 1400
San Francisco, California 94101
Telephone: (415) 983-0900
Facsimile: (415) 397-9005
matt@righettilaw.com
jglugoski@righettilaw.com
mike@righettilaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON BELEVICH, individually, and on behalf of all others similarly situated<br><br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA NATIONAL ASSOCIATION, BANK OF AMERICA N.A., BANK OF AMERICA NATIONAL ASSOC and DOES 1 through 50, inclusive,<br><br><br>Defendants. | CASE NO. 2:15-cv-9171-PSG(JPRx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL**<br><br>Date: July 31, 2017<br>Time: 1:30 p.m.<br><br>**Hon. Philip S. Gutierrez<br>Courtroom 6A** |

TO ALL PARTIES AND ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Monday, July 31, 2017 at 1:30 p.m. in Courtroom 6A, located at First Street Courthouse, 350 West 1st Street, 6th Floor, Los Angeles, California 90012, before the Honorable Philip S. Gutierrez of the United States District Court, Central District of California, Plaintiff Anton Belevich moves the Court for preliminary approval of the JOINT STIPULATION FOR CLASS ACTION SETTLEMENT AND RELEASE OF CLAIMS (attached as **Exhibit 1** to the Declaration of Matthew Righetti and referred to herein as the "Settlement Agreement"). In particular, Plaintiff moves for orders:

***As to the Plaintiff Class:***

(1) granting preliminary approval of the Settlement Agreement;

(2) conditionally certifying the Settlement Class for settlement purposes;

(3) approving the Notice of Proposed Class Action Settlement ("Class Notice") and Claim Form (attached as **Exhibits A and B** to the Settlement Agreement);

(4) preliminarily appointing and approving Matthew Righetti and Michael Righetti of Righetti Glugoski, P.C. as Counsel for the Class;

(5) preliminarily appointing and approving the named Plaintiff as Class Representative;

(6) preliminarily appointing and approving Kurtzman Carson Consultants ("KCC") as the Settlement Administrator; and

(7) authorizing the Settlement Administrator to mail the approved Class Notice to the Settlement Class.

This Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Matthew Righetti ("Righetti Decl."), and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Accompanying this Motion is also Plaintiff's Proposed Order Granting Preliminary Approval of Settlement.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………………………………iv-viii

I.      INTRODUCTION…………………………………………………....2

                A. The Positions At Issue…………………………………..…3

II.     BACKGROUND AND OVERVIEW OF THE SETTLEMENT ..………...3

A. Procedural Background………………………………......….……3

B. Discovery Completed……………………………..……………4

C. Motion Practice………………………………...……………………5

D. Mediation………………………………………………………5

E. Damages Analysis……………………………......…………6

        1. Defendant's Exposure to Meal Period Violations………………7

        2. Waiting Time Penalties……………………………………8

        3. Penalties Pursuant to the Private Attorneys' General Act………8

III.    TERMS OF THE SETTLEMENT…………………..……..……………..9

A.      Basic Terms………………………………………………9

 B.     Class Definitions……………………………………10

C.      Allocation and Awards…………………………...……10

D.      Scope of Release and Final Judgment……………………11

E.      Settlement Administration……………….…………………12

i

IV.   ARGUMENT…...................................…….....…………………………..12

    A. The Court Should Grant Preliminary Approval of the Settlement as to the California Class under Rule 23…………………………..…………12

    B. The Court Should Conditionally Certify the California Class…………13

        1.    The Class is numerous and ascertainable……………………13

        2.    Plaintiffs' claims raise common issues of fact or law………...14

        3.    Plaintiff's claims are typical of the claims of the Class……..15

        4.    Plaintiff and Class Counsel will adequately represent the Class…………………………………………………………15

        5.    The Rule 23(b)(3) requirements for class certification are also met.......................................................................................15

    C. The Settlement Should Be Preliminary Approved as to the Class and Finally Approved as to the Collective Because It Is Fair, Reasonable, and Adequate……...........................................................................................17

        1.    The terms of the Settlement are fair, reasonable, and adequate.......................................................................................17

        2.    The extensive informal discovery exchange between the parties enabled them to make informed decisions regarding settlement……………………………………...…………..19

        3.    Litigating this action not only would delay recovery, but would be expensive, time consuming, and involve substantial risk.......................................................................................20

        4.    The settlement is the product of informed, non-collusive, and arm's length negotiations between experienced counsel...………..20

    D. The Class Representative Enhancement Payments are Reasonable........21

E.  The Requested Attorneys' Fees and Costs are Reasonable…………..…22

F.  The Proposed Noticed and Claims Process are Reasonable…………...24

V.  CONCLUSION……………………………..…………………………….27

# TABLE OF AUTHORITIES

**Pages**

## **FEDERAL CASES**

*Amchem Products, Inc. v. Windsor*
 521 U.S. 591, 593 (1997)……………………………………………........17

*Brewer v. Gen. Nutrition Corp.,*
2014 WL 5877695(N.D. Cal. Nov. 12, 2014)..…………………………………13

*Boyd v. Bechtel Corp.*,
485 F.Supp. 610, 617 (N.D. Cal. 1979)…………………………………………19

*Churchill Village, L.L.C. v. Gen. Elec.,*
 361 F. 3d 566, 575 (9th Cir. 2004)…………………………………………17, 25

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156, 174-75 (1974)…………………………………………………24

*Ellmore v. Ditech Funding Corp.*
(C.D. Cal., No. SAVC 01-0093, Sept. 12, 2002)…………………………………23

*Entin v. Barg*,
412 F.Supp. 508, 514 (E.D. Pa. 1976)…………………………………………18

*Fry v. Hayt, Hayt & Landau*
 198 F.R.D (E.D. Pa.2000)..………………………………….............14, 15

*Garibaldi v. BANA*
 (ND CA)..…………………………………………………………………...8

*Gen. Tel. Co. of S.W. v. Falcon*
 457 U.S. 147, 156  (1982)…………………………………………........15

*Hanlon v. Chrysler Corp.,*
150F. 3d 1011, 1027 (9th Cir. 1998)…………………………………*passim*

*Iknonen v. Hartz Mountain Corp.,*
122 F.R.D. 258, 262 (S.D. Cal. 1988)…………………………………………..14

*Ingram v. The Coca-Cola Co.*,
200 F.R.D. 685, 694 (N.D. Ga. 2001)…..………………………………………21

*In re Activision Sec. Litig.*,
723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989)…………………………………….23

*In Re Armored Car Antitrust Litig.*,
472 F.Supp. 1357, 1373 (N.D. 1979)…………………………………………….18

*In Re: Bank of America Wage and hour Employment Litigation*
(Dist. Of Kansas)..………...………………………………………..………….7

*In Re Four Seasons Secs. Laws Litig.*,
58 F.R.D. 19, 37 (W.D. Okla.1972)……………………………………………..18

*In re Mego Financial Corp. Sec. Littig.*,
 213 F. 3d 454, 459 (9th Cir. 2000)………………………………………………18

*In Re S. Ohio Corr. Facility*,
175 F.R.D. 270, 272 (S.D. Ohio 1997)………………………………………….21

*In Re Sunrise Secs. Litig.*,
131 F.R.D. 450, 457 (E.D. Pa. 1990)…………………………………………....18

*In re Syncor ERISA Litig.*,
 516 F. 3d 1095, 1101(9th Cir. 2008)……………………………………………18

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231, 256-58 (D. Del. 2002)………………………………………..18

*Knight v. Red Door Salons, Inc.*,
2009 WL 248367 (N.D. Cal. 2009)………………………………………………23

*Lewis v. Starbucks Corp.*,
 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008)……………………………19

*Monterrubio v. Best Buy Stores, L.P.*,
291 F.R.D. 443, 454 (E.D. Cal. 2013)………………………………………….19

*Mousai v. E-Loan, Inc.*,
No. C 06-01993 SI (N.D. Cal. May 30, 2007)…………………………………22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306, 314 (1950)……………………………………………………25

*Nicole Torres et al. v. Wells Fargo Bank, N.A et al*,
Case No. 5:15-cv-2225 PSG (KKx)………………………………....…7, 19

*Noyes v. Kelly Servs., Inc.,*
22008 WL 3154681 (E.D. Cal. Aug. 4, 2008)…………………………………24

*Officers for Justice v. Civil Service Comm'n*
688 F.2d 615, 625 (9th Cir. 1982)……………………………..…….……..17, 18

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797, 811-12 (1985)…………………………………………………24

*Powers v. Eichen*,
229 F.3d 1249, 1256 (9th Cir. 2000)……………………………………………..22

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*
2011 WL 5884224, No. CV F 10–1163 LJO MJS. (E.D. Cal. 2011)…………..…23

*Roberts v. Texaco, Inc.*,
979 F. Supp. 185 (S.D.N.Y. 1997)…………………………………………21

*Rodriguez v. West Publ'g Corp.,*
 WL 2827379 at *9 (C.D. Cal. Sept 10, 2007)…………………………………18

*Silber v. Mabon*,
18 F.3d 1449, 1454 (9th Cir. 1994)……………………………………….25

*Staton v. Boeing Co.*,
327 F.3d 938, 977 (9th Cir. 2003)………………………………………..21, 22

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294, 300 (N.D. Cal. 1995)…………………………………………22

*Vasquez v. Coast Valley Roofing*,
266 F.R.D. 482, 491-492 (E.D. Cal. 2010)……………………………………22

*Wang g. Chinese Daily News, Inc.,*
 737 F. 3d 538 (9th Cir. 2013)……………………………………………...14, 16

*Wren v. RGIS Inventory Specialists,*
  2011 WL 1230826 at *6 (N.D. Cal. Apr. 1, 2011)……………………18, 21, 23

*Yokoyama v. Midland Nat. Life Ins.Co.,*
  594 F. 3d 1087, 1094 (9th Circ. 2010)……………………………………16

**STATE CASES**

*Barela v. Ralph's Grocery Company*
(Los Angeles Super. Ct., No. BC070061, June 5, 1998)…………………………23

*Benton v. Telecom Network Specialists, Inc.,*
220 Cal. App. 4th 701 (Cal. Ct. App. 2014)……………………………..…16

*Big Lots Overtime Cases*
 (San Bernardino Super. Ct., JCC Proceeding No. 4283, February 4, 2004)…….23

*Castellanos* v. *The Pepsi Bottling Group,*
 (Alameda Cnty. Super Ct., March 11, 2010)……………………………………22

*Contreras v. Bank of America,*
 (San Francisco Cnty. Super. Ct., Sept. 3, 2010)………………………………22

*Davis v. The Money Store, Inc.*
(Sacramento Super. Ct., No. 99AS01716, Dec. 26, 2000)………………………23

*Hasty v. Elec. Arts, Inc.,*
 (San Mateo Cnty. Super. Ct., Sept. 22, 2006)…………………………………22

*Ketchum,*
 24 Cal.4th at 1132-33…………………………………………………………23

*Meewes v. ICI Dulux Paints,*
 (Los Angeles Cnty. Super. Ct. Sept. 19, 2003)………………………………22

*Miskell v. Automobile Club of Southern California*
(Orange County Super. Ct., No. 01CC09035, May 27, 2003)……………………23

*Novak v. Retail Brand Alliance, Inc.,*
(Alameda Cnty. Super. Ct., Sept. 22, 2009)………………………..…………22

*Sconce/Lamb Cremation Cases*
 (Los Angeles Super. Ct., JCC Proceeding No. 2085, March 24, 1992)…………23

**RULES AND STATUTES**

Cal. Lab. Code §203, 226, 2698 ……………………………………………12

Fed. R. Civ. P. 23……… ………………………………………….…*passim*

**OTHER AUTHORITIES**

Manual for Complex Litigation
 (4th ed. 2004) §21.61, § 21.311 and 21.312.……………………………13, 25, 26

Posner, Economic Analysis of the Law
(4th ed. 1992) 534, 567 ……………………………………………………..24

Conte & Newburg
§ 8.39, § 8.21 and 8.39 ……………………………………………………25, 26

## I.  INTRODUCTION

Plaintiff seeks preliminary approval of the Joint Stipulation for Class Action Settlement and Release of Claims (hereinafter referred as the "Settlement" or "Settlement Agreement"). Plaintiff, Anton Belevich, and Defendant, Bank of America National Association ("BANA"), collectively referred to herein as "the Parties," have agreed to resolve numerous wage and hour claims pertaining to meal period entitlement and premium meal period wages, which were unlikely to have been prosecuted as individual actions.  In doing so, Plaintiff submits that the Settlement Agreement provides substantial benefit to the members of the Plaintiff Class, which includes approximately 7,310 BANA Personal Bankers/Relationship Managers employed by Defendant in California from September 21, 2011 through December 31, 2016.  The total settlement amount is $6,000,000.00.  This settlement is fair, reasonable, and adequate in all respects, as further demonstrated herein.

Plaintiff pursued this class action on behalf of Personal Bankers, whose titles were later changed by Defendant to Relationship Managers, working at BANA retail branches in California.  It is based on Defendant's alleged violations of California labor laws pertaining to meal periods, specifically, the alleged failure to provide one hour of meal period premium pay on days when Personal Bankers were not able to start their meal periods before the end of the fifth hour of their shift.  Following hard-fought litigation that included 1) extensive formal discovery; 2) discovery disputes that resulted in a stipulation and order from the Court; 2) substantial motion practice including the filing of Defendant's motion for summary judgment and the filing of Plaintiff's motion for class certification; and 3) further informal discovery, the parties attended a mediation before Phyllis Cheng – an experienced and respected Central District panel mediator.  The parties did not reach a settlement at the mediation; however, after further arm's-length negotiations between counsel and Ms. Cheng, the Parties assented to the terms of Ms. Cheng's mediator's proposal.  The proposed Settlement falls well within the range of reasonableness and satisfies the criteria for

approval under federal law. Accordingly, Plaintiff requests that the Court preliminarily approve the Settlement Agreement.

## II. BACKGROUND AND OVERVIEW OF THE SETTLEMENT

### A. Procedural Background

On September 21, 2015, Plaintiff Anton Belevich filed *Anton Belevich v. Bank of America, N.A.*, Case No. Case No. BC595333, in the Los Angeles County Superior Court. Plaintiff filed a First Amended Complaint ("FAC") on October 23, 2015, and a Second Amended Complaint ("SAC") on January 25, 2016.

In the putative class action Complaint, FAC, and SAC, Plaintiff alleged claims for (1) failure to provide meal periods under Cal. Labor Code §§ 226.7 and 512, (2) failure to provide compliant itemized wage statements under Cal. Labor Code § 226, (3) waiting time penalties under Labor Code §§ 201-203, (4) unfair competition under Cal. Bus. & Prof. Code § 17200, et. seq., and (5) penalties under the Private Attorney General Act ("PAGA"), Labor Code § 2698 et seq.

The Complaint, FAC, and SAC sought certification of a putative class composed of all non-exempt "personal bankers" employed by Defendant in California who were allegedly denied meal periods, compliant wage statements, and waiting time penalties within the statutory time period. The Complaint, FAC, and SAC seek relief including unpaid meal period premiums, wage statement penalties, waiting time and penalties pursuant to the Private Attorneys General Act, interest, and attorney's fees and costs. The Complaint, FAC, and SAC, and all claims that have been made therein, are referred to herein as the "Lawsuit."

On November 25, 2015, Defendant removed the Lawsuit to the United States District Court, Central District of California, pursuant to 28 U.S.C. 1332(a)(1) (traditional diversity) and 28 U.S.C. 1332 and 1441 (the Class Action Fairness Act). On December 18, 2015, Plaintiff moved to remand the Lawsuit to state court. See Dkt. # 12. The Court denied the motion to remand on March 3, 2016, finding that it has subject matter jurisdiction over this case. See Dkt. # 26.

On February 11, 2016, Defendant moved to dismiss the Second Amended Complaint.  On April 11, 2016, the Court granted the motion with respect to Plaintiff's Second Claim for Relief, for alleged inaccurate itemized wage statements. The Court otherwise denied the motion.  See Dkt. #35.  On May 13, 2016, Defendant moved for reconsideration of the portion of the Court's order denying the Motion to Dismiss the Second Amended Complaint.  See Dkt. #38.  The Court denied the motion on July 8, 2016.  See Dkt. #43.  Thereafter, Defendant answered the SAC, and the parties commenced discovery.

## B. Discovery Completed

The Parties engaged in formal written discovery.  Each party propounded requests for production of documents and special interrogatories.  Each party prepared responses to the written discovery and produced documents.  Additionally, the parties participated in an informal exchange of extensive documents and information, including Defendant's policies and procedures regarding meal periods and timekeeping, data regarding the size of the putative meal period class, the number of shifts where timekeeping and payroll records show timely meal periods of at least 30 minutes were not taken by putative class members, the average hourly rate of pay for each putative class member for the instances when they recorded a meal period starting later than the end of their fifth hour of work, the termination dates (if applicable) of each putative class member, the final hourly rate of pay at the time of termination for terminated putative class members, and information regarding whether each putative class member has a severance agreement, or was a class member of a prior lawsuit against the Defendant who might have resolved meal period or waiting time penalty claims pursuant to settlements and releases executed in those lawsuits.  Decl. of Matthew Righetti.

During pre-certification discovery, a discovery dispute arose regarding (1) Defendant's production of the identities and contact information for putative class members and (2) Defendant's production of time records and/or payroll records for

putative class members.  After extensive meet and confer efforts, both in person, during teleconferences and written exchanges the parties were able to resolve the dispute by stipulating to certain facts about what the records might show, which is documented in a Joint Stipulation and Order.  See Docket #58.  The parties also stipulated to send a letter (a so-called *Bel-Aire* notice) to a subset of putative class members giving them the chance to opt out of having Defendant produce their contact information to Plaintiff's counsel.  *Id.*

Two depositions were taken in the case.  Defendant deposed Plaintiff on September 27, 2016, and Plaintiff took the deposition of Defendant via Fed. Rule of Civ. Proc. 30(b)(6) on December 15, 2016.  At the time the parties reached a settlement, a third deposition (a percipient defense witness) was on calendar to take place in Seattle, Washington.  Righetti Decl.

## C. Motion Practice

This case involved a substantial amount of motion practice, most of which is described above in the Procedural Background section.  In addition, Defendant filed a motion for summary judgment or in the alternative partial summary judgment (See Docket #59), and Plaintiff filed a motion for class certification (See Docket #60).

## D. Mediation

After Defendant filed its motion for summary judgment and after Plaintiff filed his motion for class certification, the Parties mutually agreed to participate in the mediation process.  The Parties elected to use the Central District panel mediator assigned to the case, Phyllis Cheng, and the Parties engaged in mediation with Ms. Cheng on April 4, 2017.  The Parties did not reach a settlement at the mediation. However, the mediator made a settlement proposal, which the parties both subsequently accepted.  The Parties fully executed a Memorandum of Understanding on April 11, 2017.   Thereafter, the parties negotiated and executed a comprehensive settlement agreement.  A true and correct copy of the Joint Stipulation for Class

Action Settlement and Release of Claims is attached to the Righetti Decl. as Exhibit 1.

### E. Damages Analysis

Class Counsel based their damages analysis and settlement negotiations on the formal and informal discovery, interviews and declarations discussed above, including the payroll and timekeeping data of all 7,310 Plaintiff Class Members produced by Defendant in an Excel spreadsheet. The spreadsheet contained data regarding the average hourly rate for the Plaintiff Class Member based on the precise hourly rate during each day that s/he recorded a late meal period.  The spreadsheet also included the total number of days each Plaintiff Class Member recorded a late meal period, and the number of pay periods during the year preceding the filing date to the present that a late meal period was recorded for each Plaintiff Class Member. The spreadsheet also contained data regarding whether the Plaintiff Class Member was a current or former employee, and whether each Plaintiff Class Member had signed a severance agreement or had executed a release by virtue of participation in other litigation.

Plaintiffs' Counsel made several factual and legal assumptions to determine Defendant's total exposure to the Plaintiff Class Members' claims.  For example, in determining Defendant's total exposure, Plaintiff *assumed* that for each meal period recorded after the end of the fifth hour of work, the Plaintiff Class Members did not voluntarily choose to take his/her meal period after the end of the fifth hour of work. In other words, Plaintiff *assumed* that Defendant did not provide the Plaintiff Class Members with the opportunity to take a timely meal period on days when a late meal period was reflected in the time records.  Of course, whether Settlement Class Members voluntarily chose to take a meal period late versus whether Defendant prevented Plaintiff Class Members from timely meal periods was the quintessential dispute in this case – a disputed issue that also posed the greatest hurdle Plaintiff faced in achieving class certification.  *See, Nicole Torres et al. v. Wells Fargo Bank,*

*N.A. et al*, Case No. 5:15-cv-2225 PSG (KKx), Order DENYING Motion for Class Certification, March 21, 2017, a copy of which is attached to the Righetti Decl. as Exhibit 2.

## 1.  Defendant's Exposure to Meal Period Violations

The time records produced by Defendant for Personal Bankers/Relationship Managers showed that during the class period, Personal Bankers/Relationship Managers recorded 381,223 meal periods that began after the end of the fifth hour of work.  The product of these 381,223 meal periods times the average hourly rate of $19.97 equals $7,613,023.31, which is Defendant's approximate total exposure to the claims assuming all Personal Bankers and all meal periods that began after the end of the fifth hour are included.[1]

However, Defendant also produced data about the Plaintiff Class Members that impacted their exposure to the downside, such as (1) participation in other class action settlements that potentially released claims for meal period violations, waiting time penalties and/or inaccurate pay stub claims or (2) the existence of a severance agreement releasing claims alleged herein.   Defendant identified previous class action settlements that released of overlapping claims in this case, which of course reduced BANA's exposure to the Plaintiff Class Members' claims.  The first is *In Re: Bank of America Wage and hour Employment Litigation*, Case No. 10-MD-2138-JWL (Dist. of Kansas).  A true and correct copy of the Order Approving Settlement is marked and attached to the Righetti Decl. as Exhibit 3.  The MDL settlement released all meal and rest period claims, inaccurate pay stub claims, and waiting-time penalty claims for participating class members through December 18, 2013.  *Id.*  The second class action settlement that impacted Defendant's exposure to Plaintiff's class claims

---

[1] Defendant asserts that it always provided Plaintiff and Personal Bankers the opportunity to take meal periods before the end of the fifth hour of work.  Thus, even if a meal period was "late," Defendant denies that necessarily violates the law, as Personal Bankers could voluntarily begin their meal period after the end of the fifth hour.

is *Garibaldi v. BANA*, Case No. 3:13-CV-02223-SI, Northern Dist. of California. A true and correct copy of the Order Granting Final Approval of Settlement in that action is attached to the Righetti Decl. as Exhibit 4. The *Garibaldi* settlement released waiting time penalties and inaccurate pay stub claims for Personal Bankers through December 31, 2014. *Id.*

Given these class action settlements and severance agreements and their impact on Defendant's exposure to Plaintiff's class claims, Defendant provided supplemental data that reflected 274,251 meal periods that began after the end of the fifth hour that fall outside of the period covered by a settlement release or severance agreement. Plaintiff estimates Defendant's exposure to the meal period claim by multiplying 274,251 times the average rate of pay for Plaintiff Class Members ($19.97), which equals $**5,476.792.47 ($19.97 x 274,251)**.

### 2. Waiting Time Penalties

Data produced by Defendant showed that of the approximately 7,310 Personal Bankers, approximately 3,100 of them are former employees with potential waiting time penalties claims. Of those 3,500 former employees, Defendant's data showed that 1,800 of them were class members in either the *Garibaldi* or *Pineda* actions and whose employment ended prior to December 31, 2014, and were thus subject to a release that included waiting time penalties. Thus, Defendant's total potential exposure to waiting time penalties in this case is approximately **$8,147,760.00**, calculated as follows: 1,700 former class members x $19.97 x 8 hours x 30 days.

### 3. Penalties Pursuant to the Private Attorneys' General Act

Data produced by Defendant included the total number of pay periods worked by putative class members during the year preceding the filing date of the complaint to the present during which putative class members recorded beginning a meal period after the end of the fifth hour of work. The total number of pay periods was approximately 70,000. The PAGA provides for a civil penalty of between $100 for each aggrieved employee per pay period for the initial violation and $200 for each

aggrieved employee per pay period for subsequent violations (Cal. Lab. Code Section 2699(f)(2)). Thus, if the Court were to assess the maximum penalty as an initial violation for all pay periods, the maximum penalty would be $7,000,000.00. If the Court were to assess the maximum penalty ($200) for all subsequent pay periods, and $100 for the initial pay period, the maximum penalty would be approximately $13,999,900.00.

## III. TERMS OF THE SETTLEMENT

### A. Basic Terms

BANA has agreed to pay a total of $6,000,000.00 ("Gross Settlement Fund") to settle all aspects of the case. The Net Settlement Fund, i.e. the amount available to pay Settlement Class Members (i.e. all Plaintiff Class Members who do not opt out of the settlement), is defined as the Gross Settlement Fund minus the amount of any attorneys' fees and costs awarded to Class Counsel by the Court, the amount of any enhancement payment awarded to the Class Representative by the Court, the amount of the payment made to the LWDA pursuant to PAGA, and the amount of court-approved Claims Administrator's fees and costs.

Pursuant to the agreement, Plaintiff may file a motion for reasonable attorneys' fees up to 25% of the Gross Settlement Fund (i.e. $1,500,000.00), which BANA will not oppose so long as the request is no more than 25% of the Gross Settlement Fund. Plaintiff will also request reimbursement of litigation costs of no more than $18,500.00.

Plaintiff shall also request a Class Representative enhancement up to $10,000.00 for Plaintiff's work in connection with the case. Plaintiff initiated the action and played a vital role throughout the litigation. Plaintiff cooperated in all aspects of the discovery process, responded to questions, produced documents, provided a full day of deposition testimony and attended the mediation. Mr. Belevich evaluated the proposed settlement, and at all times he put the interests of the Plaintiff

Class Members ahead of his own.  Decl. of Michael Righetti and Decl. of Anton Belevich.

The Settlement Agreement allocates $25,000.00 of the Gross Settlement Fund to the settlement of the PAGA claims alleged in the case.  The administrator shall pay seventy-five percent (75%) of the $25,000.00 (or $18,750.00) of this amount to the LWDA, and the remaining 25% (or $6,250.00) shall be distributed to the Net Settlement Fund for distribution to Settlement Class Members who participate in the settlement.

Finally, the costs incurred by the Claims Administrator will be paid out of the Gross Settlement Fund.  The parties have selected KCC, who has estimated that that it will cost $39,000 to complete all work associated with administering the settlement.

## B. Class Definitions

An individual is a member of the Plaintiff Class if he or she belongs to the following defined group:

- All persons, who, from September 21, 2011 through December 31, 2016, worked for Bank of America in the State of California as a Personal Banker or Relationship Manager.

## C. Allocation and Awards

All members of the Plaintiff Class who do not exclude themselves from the settlement, i.e. Settlement Class Members, shall be entitled to submit a Claim Form and receive their pro rata share of the Net Settlement Fund.  Each Settlement Class Member's settlement share will be determined based on his/her respective number of weeks during the Class Period that they actively worked.  The Net Settlement Fund shall be divided by the total number of qualifying work weeks worked by members of the Plaintiff Class during the Class Period.  The resulting amount will be the amount of dollars per qualifying work week to which each Plaintiff Class Member will be entitled.  The number of Qualifying Work Weeks worked by each individual member

of the Plaintiff Class multiplied by the dollar amount per workweek shall comprise their Individual Settlement Share. This formula was devised as being not only equitable, but also as a practical and logistical tool to simplify the claims process.

### D. Scope of Release and Final Judgment

Upon the final approval by the Court of this Settlement Agreement, and except as to such rights or claims as may be created by this Settlement Agreement, all members of the Settlement Class, regardless of whether that member submitted a timely Claim Form, fully release and discharge Defendant and Defendant's present and former parent companies, subsidiaries, shareholders, officers, directors, employees, agents, affiliates, servants, registered representatives, attorneys, insurers, successors and assigns ("Releasees"), from any and all individual and class claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, that were alleged in the Lawsuit, including, but not limited to any claims under federal or state law that are alleged in the Second Amended Complaint, i.e., that Defendant failed to properly provide meal periods and/or pay meal period premiums (the "Released Claims"). The Released Claims shall include claims under California state law for alleged failure to provide meal periods or pay meal period premiums in lieu thereof, failure to pay all wages due upon termination, failure to timely furnish accurate itemized wage statements, engaging in unfair business practices related to the Released Claims, and for any statutory or civil penalties under any statute, ordinance, related to the Released Claims, including, without limitation, Cal. Lab. Code §§ 203, 226 and 2698, et seq. The release of claims for waiting-time penalties and inaccurate itemized wage statements penalties shall encompass such claims regardless of the underlying theory. The Parties stipulate that beyond the Gross Settlement Fund, Defendant shall not owe any further monies to the Class Representative, Settlement Class, or to Class Counsel based upon the Released Claims.

### E. Settlement Administration

The Parties have agreed to use KCC to administer the Settlement.   KCC has submitted a bid to complete all work associated with administering the settlement. The total amount of that bid is $39,000.  Righetti Decl., Exhibit 5.  KCC will, among other things, distribute the Class Notice, calculate individual settlement payments, calculate all applicable payroll taxes, withholdings and deductions, preparing and issuing all disbursements to be paid to Class members, Class Counsel, the LWDA, any applicable local, state, and federal tax authorities, and handling inquiries and/or disputes from CMs.  KCC is also responsible for the timely preparation and filing of all tax returns, and making the timely and accurate payment of any and all necessary taxes and withholdings. KCC will also establish a mailing address and toll-free telephone number to direct inquiries regarding the Notices and determination of individual settlement payments.

### IV.   ARGUMENT

#### A. The Court Should Grant Preliminary Approval of the Settlement as to the California Class under Rule 23.

A certified class action may not be settled without approval of the Court. *See* FED. R. CIV. P. 23(e). Review and approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.  Manual for Complex Litigation (4th ed. 2004), § 21.61. The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if

it has not yet been certified (FED.R.CIV. P. 23(a),(b); *Hanlon*, 150 F.3d at 1020); and (2) that the settlement is fair, reasonable, and adequate (FED.R.CIV.P. 23(e)(2)).

This class action settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). Accordingly, the Court should preliminary approve the settlement as to the Class.

### B. The Court Should Conditionally Certify the California Class.

A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all members individually is "impracticable"; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interests of all members of the class. FED. R. CIV. P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Applying this standard, numerous cases similar to this case have certified classes of retail employees who have suffered wage and hour violations under California law. *See, e.g., Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2014 WL 5877695 (N.D. Cal. Nov. 12, 2014) (certifying California Rule 23 class in a case ascertaining similar wage and hour violations for non-exempt, hourly employee working as Sales Associates and Assistant Managers). Likewise, the Plaintiff Class meets all of these requirements.

### 1. The Class is numerous and ascertainable.

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. FED.R.CIV.P. 23(a)(1). While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485

(E.D. Cal. 2006).  Here, the proposed Settlement includes over 7,000 employees, which satisfies the numerosity requirement.

### 2.  Plaintiffs' claims raise common issues of fact or law.

The commonality requirement of FED. R. CIV. P. 23(a)(2) "is met if there is at least one common question or law or fact."  *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Rule 23(a)(2) has been construed permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).  Plaintiff "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution . . . a single common question" satisfies commonality.  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538 (9th Cir. 2013)).

Common questions of law and fact predominate thereby satisfying paragraphs (a)(2) and (b)(3) of Rule 23, as alleged in the operative complaint.  Defendant has uniform policies applicable to all Personal Bankers/Relationship Managers. Plaintiff and Defendant have stipulated to several facts that support Plaintiff's contention that common question of law and fact predominate, e.g. (1) the fact that Defendant's time records for Plaintiff Class Members reflect meal periods that begin after the end of the fifth hour of work, and (2) prior to January 2017, Defendant did not have any mechanism in place to automatically investigate meal periods that began after the end of the fifth hour of work to determine if an additional hour of premium pay should be paid.  *See* Dkt. # 56.  Because Plaintiff claims that Plaintiff Class Members' entitlement to premium meal period wages can be resolved at the same juncture, Plaintiff contends the commonality requirement is satisfied for the Plaintiff Class.

### 3.  Plaintiff's claims are typical of the claims of the Class.

 "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, a representative's claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially

identical." *Hanlon*, 150 F.3d at 1020. To satisfy the requirement of typicality, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982).  Here, Plaintiff's claims are typical of those of all other Plaintiff Class Members.  Plaintiff's time records and payroll records confirm that, on several occasions, he took meal periods that commenced after the end of his fifth hour of work and was never compensated any additional premium pay.   Plaintiff's counsel's interviews of Plaintiff Class Members and review of timekeeping and payroll data also confirm that other Personal Bankers/Relationship Managers throughout California recorded meal periods that began after the end of their fifth hour of work but did not receive additional premium pay.  Thus, this requirement is also satisfied.

### 4.  Plaintiff and Class Counsel will adequately represent the Class.

To meet the adequacy of representation requirement in FED. R. CIV. P. 23(a)(4), Plaintiff must show "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiff's claims are not antagonistic to the claims of members of the putative Class. There is no conflict between Plaintiff and the Plaintiff Class in this case; Plaintiff's claims are in line with the claims of the class.  Plaintiff has prosecuted this case with the interests of the Plaintiff Class in mind. Moreover, Class Counsel has extensive experience in class action and employment litigation, including wage and hour class actions, and do not have any conflict with the class.  Righetti Decl.

### 5.  The Rule 23(b)(3) requirements for class certification are also met.

Under Rule 23(b)(3), Plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class

action is "superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang, supra*, 737 F.3d at 545 (9th Cir. 2013).

Here, Plaintiff contends the common questions raised in this action predominate over any individualized questions concerning the Plaintiff Class. The Class is entirely cohesive because resolution of Plaintiff's claims all hinge on the uniform policies and practices of Defendant, rather than any treatment the Plaintiff Class Members experienced on an individual level. As a result, the resolution of these alleged class claims will be resolved through the use of common forms of proof, such as Defendant's uniform policies (including Defendant's California-wide change in policy after the litigation commenced) and will not require inquiries specific to individual class members.[2]

Further, Plaintiff contends the class action mechanism is a superior method of adjudication compared to a multitude of individual suits. To determine whether the class approach is superior, courts are to consider: (A) the class members' interests in individual controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. FED.R.CIV.P. 23(b)(3)(A)-(D). Here, the Class members do not have a strong interest in controlling their individual claims. If the Class members proceeded on these claims as individuals, their many individual suits would require duplicative

---

[2] Although the amount of time worked off-the-clock and number of missed meal and rest periods may vary, these are damages questions and should not impact class certification. *Yokoyama v. Midland Nat. Life Ins. Co*., 594 F.3d 1087, 1094 (9th Cir. 2010). The fact that individual inquiry might be necessary to determine whether individual employees were able to take breaks despite the defendant's allegedly unlawful policy is not a proper basis for denying certification. *Benton v. Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701 (Cal. Ct. App. 2014).

discovery and duplicative litigation.  In contrast, the class action mechanism would efficiently resolve numerous substantially identical claims at the same time while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation.  Manageability is not a concern in the settlement context.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 593 (1997).  Accordingly, class treatment is superior to individual treatment as a method for adjudicating the claims in this action.

### C. The Settlement Should Be Preliminarily Approved as to the Class and Finally Approved as to the Collective Because It Is Fair, Reasonable, and Adequate.

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Included in this analysis are considerations of: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at \*6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).  In light of these factors, the proposed settlement is fair, reasonable, and adequate.

### 1. The terms of the Settlement are fair, reasonable, and adequate.

1    In evaluating the fairness of a proposed settlement, courts compare the
2   settlement amount with the estimated maximum damages recoverable in a successful
3   litigation. *In re Mego Financial Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir.2000).
4   Courts routinely approve settlements that provide a fraction of the maximum
5   potential recovery. *See, e.g., Officers for Justice v. Civil Serv. Comm'n of San
6   Francisco*, 688 F.2d 615, 623 (9th Cir. 1982).[3]  A review of the Settlement
7   Agreement reveals the fairness, reasonableness, and adequacy of its terms. The Net
8   Settlement Amount of $4,410,724.00, derived from a Gross Settlement Amount of
9   $6,000,000.00, will result in fair and just relief to Settlement Class Members.
10  Payments to the Settlement Class members are roughly 22% of the maximum total
11  damages and penalties attainable in this case, and the maximum total damages
12  assumes that every single meal period in the record that began after the end of the
13  fifth hour of work warranted the payment of an additional hour of premium, which is
14  a rather grandiose assumption for purposes of calculating realistic exposure. Thus, the
15  result is well within the reasonable standard when considering the difficulty and risks
16  presented by pursuing further litigation.  Furthermore, the final settlement amount
17  takes into account the substantial risks inherent in any class action wage-and hour
18  case, as well as the specific defenses asserted by Defendant.  This case contained
19  several inherent risks, some of which stemmed from previous rulings made by this

20  _____

21  [3] *Rodriguez v. West Publ'g Corp.*, 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) (approving
    settlement representing 30% of damages estimated by plaintiffs' expert); *In re Warfarin Sodium
22  Antitrust Litig.*, 212 F.R.D. 231, 256-58 (D. Del. 2002) ("The settlement amount of $44.5 million
    represents more than 33% of the maximum possible recovery, a very reasonable settlement when
23  compared with recovery percentages in other class actions."); *In re Sunrise Secs. Litig.*, 131 F.R.D.
    450, 457 (E.D. Pa. 1990) (approving settlement that provided for only about 20% of damages as
24  being "well within the range of reasonableness"); *In Re Armored Car Antitrust Litig.*, 472 F.Supp.
    1357, 1373 (N.D. 1979) (settlements with a value of 1% to 8% of the estimate total damages were
25  approved); *Entin v. Barg*, 412 F.Supp. 508, 514 (E.D. Pa. 1976) ("Given these risks alone, we
    would find a recovery of 17% of the amount of 'guesstimated' alleged damages (and probably a
26  much higher percentage of the true figure if it could be known) and about one third of the damages
    suffered by claim-filing Settlement Subclass Members to be within the range of reasonableness.");
27  *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving class
28  settlement that was 8% of estimated total class damages).

Court regarding similar class claims.  *See Nicole Torres et al v. Wells Fargo Bank, N.A. et al*, *supra*, Exhibit 2 to Righetti Decl.  The *Torres* decision is significant because, there, this Court denied class certification where the plaintiff sought to certify a class based on the alleged underpayment of wage premiums.  *Id.*  The Court stated, "membership in a class that is entitled to wage premiums under Section 226.7 necessarily requires an individualized inquiry into the underlying question of Defendant's liability as to every class member." *Id.* p. 4.   Against the backdrop of this decision as well as other decisions denying certification of meal period claims, Plaintiff submits that the result achieved in this case is fair and reasonable, as Plaintiff and the class face the very real possibility of otherwise recovering nothing.

### 2.  The extensive informal discovery exchange between the parties enabled them to make informed decisions regarding settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617 (N.D. Cal. 1979).  Informal discovery serves the same purpose, and is a strong factor in favor of settlement approval so long as the Parties had an opportunity to "form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

As discussed in detail above, the Parties engaged in extensive formal discovery before entering into settlement discussions.  Once they commenced settlement discussions, the parties then engaged in an extensive informal information exchange.  Through this formal and informal discovery, the Parties were able to accurately assess the claims and defenses, as well as the legal and factual issues that would arise if the case continued in litigation, and eventually proceeded to trial.  In addition, in reaching this settlement, Class Counsel relied on their substantial litigation

experience in similar wage and hour class actions.  Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendant's compensation policies and practices regarding meal period entitlement and premium pay. Ultimately, facilitated by experienced mediator Phyllis Cheng, the Parties used this information and discovery to fairly resolve the litigation.

### 3. Litigating this action not only would delay recovery, but would be expensive, time consuming, and involve substantial risk.

The monetary value of the proposed Settlement represents a fair compromised given the litigation risks and uncertainties posed by continued litigation. If this case were to go to trial as a class action, Class Counsel estimates that fees and costs would exceed extend into the hundreds of thousands of dollars.  Litigating the class claims would require substantial additional preparation and discovery. It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. Recovery of the damages and penalties previously referenced would also require 100% success as to each of the meal periods identified in Defendant's records that began after the end of the fifth hour of work, a questionable feat in light of recent developments in wage and hour and class action law as well as the legal and factual grounds that Defendant has asserted to defense this action.  The primary obstacle being that Defendant's liability for any of the meal periods in question would require an individualized inquiry into the circumstances of that particular situation.  In contrast, resolving this case by means of an early settlement will yield a prompt, certain, and very substantial recovery for the Settlement Class Members. Such a result will benefit the Parties and the court system.

### 4. The settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel.

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the proposed class and collective in a settlement based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter*, 2010 WL 1946784, at *8 ("Counsel's opinion is accorded considerable weight."). Here, the settlement was a product of non-collusive, arm's-length negotiations. The Parties participated in a full-day mediation before Phyllis Cheng, a Central District panel mediator with many years of experience in employment matters. In addition, the adversarial mediation resulted in a written memorandum of understanding that memorialized the core terms of the proposed settlement. Subsequently, the Parties spent months negotiating the long form settlement agreement, with several rounds of correspondence related to the details of the settlement.

### D. The Class Representative Enhancement Payments are Reasonable.

Named plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).[4] The enhancement payment of $10,000.00 for Plaintiff is intended to compensate Plaintiff for the critical role he played in this case, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Plaintiff Class. In agreeing to serve as Class Representative, Plaintiff formally agreed to accept the responsibilities

---

[4] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving $300,000 payment to each class representative in pre-certification employment class settlement) (quoting *In Re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *see also Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) (approving incentive payments up to $85,000 in pre-certification employment class settlement); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action).

of representing the interests of all Class Members. Defendant does not oppose payment of $10,000.00 as a reasonable service award. Moreover, the service awards are fair when compared to the payments approved in similar cases. *See, e.g.*, *Contreras v. Bank of America*, No. CGC-07-467749 (San Francisco Cnty. Super. Ct., Sept. 3, 2010) (approving $10,000 service payment for each class representative).[5]

### E. The Requested Attorneys' Fees and Costs are Reasonable.

In their fee motion to be submitted with the final approval papers, Class Counsel will request 25% of the Gross Settlement Amount, i.e. $1,500.000.00) plus reimbursement of costs not to exceed $18,500.00.  The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1029; *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)).  However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Id.* (citing *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")).  In California, federal and state courts have customarily approved payments of attorneys' fees amounting to one-third of the common fund in comparable wage and hour class actions.  *See Regino Primitivo Gomez, et al. v. H&R*

---

[5] *Castellanos* v. *The Pepsi Bottling Group*, No. RG07332684 (Alameda Cnty. Super Ct., March 11, 2010) (approving service award of $12,500 in a wage and hour class action settlement); *Novak v. Retail Brand Alliance, Inc.*, No. RG 05-223254 (Alameda Cnty. Super. Ct., Sept. 22, 2009) (approving service award of $12,500 each to four class representatives in wage and hour class action); *Hasty v. Elec. Arts, Inc.*, No. CIV 444821 (San Mateo Cnty. Super. Ct., Sept. 22, 2006) (approving an award of $30,000 to the class representative in a wage and hour class action); *Meewes v. ICI Dulux Paints*, No. BC265880 (Los Angeles Cnty. Super. Ct. Sept. 19, 2003) (approving service awards of $50,000, $25,000 and $10,000 to the named plaintiffs); *Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007) (approving service award of $20,000 in wage and hour case).

*Gunlund Ranches, Inc.* 2011 WL 5884224, No. CV F 10–1163 LJO MJS. (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund).[6]

In this case, given the results achieved, the effort expended litigating the case, and the difficulties attendant to litigating this case, Plaintiff will request the benchmark of 25% of the Gross Settlement fund, or $1,500,000.00.  There was no guarantee of compensation or reimbursement.  Rather, counsel undertook all the risks of this litigation on a completely contingent fee basis.  These risks were front and center.  Defendant's vigorous and skillful defense further confronted Class Counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case.

Nevertheless, Plaintiffs and Class Counsel committed themselves to developing and pressing Plaintiff's legal claims to enforce the employees' rights and maximize the class recovery.  During the litigation, counsel had to turn away other less risky cases to remain sufficiently resourced for this one.  The challenges that Class Counsel had to confront and the risks they had to fully absorb on behalf of the class are precisely the reasons for benchmarks and multipliers in contingency fee cases. *See, e.g.*, *Noyes v. Kelly Servs., Inc.,* 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008)(quoting *Ketchum,* 24 Cal.4th at 1132-33); Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed… because the

---

[6] *Wren v. RGIS Inventory Specialists,* WL 1230826, (N.D.Cal.,2011) (approving attorneys' fee award of just under 42% of common fund); *Big Lots Overtime Cases* (San Bernardino Super. Ct., JCC Proceeding No. 4283, February 4, 2004) (approving award of attorneys' fees of 33% of the recovery); *Barela v. Ralph's Grocery Company* (Los Angeles Super. Ct., No. BC070061, June 5, 1998) (same); *Davis v. The Money Store, Inc.* (Sacramento Super. Ct., No. 99AS01716, Dec. 26, 2000) (same); *Ellmore v. Ditech Funding Corp.* (C.D. Cal., No. SAVC 01-0093, Sept. 12, 2002) (same); *Miskell v. Automobile Club of Southern California* (Orange County Super. Ct., No. 01CC09035, May 27, 2003) (same); *Sconce/Lamb Cremation Cases* (Los Angeles Super. Ct., JCC Proceeding No. 2085, March 24, 1992) (same).

risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans").

Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly in hard-fought cases where, like in the case at bar, the result is uncertain.  This does not result in any windfall or undue bonus.  In the legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client rightfully expects that his or her compensation will be significantly greater than if no risk was involved (*i.e.,* if the client paid the bill on a monthly basis), and that the greater the risk, the greater the "enhancement." Adjusting court-awarded fees upward in contingent fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes those fee awards consistent with the legal marketplace, and in so doing, helps to ensure that meritorious cases will be brought to enforce important public interest policies and that clients who have meritorious claims will be better able to obtain qualified counsel.  Plaintiff will present the points and authorities in support of a request for attorneys' fees no later than 14 days prior to the deadline for Plaintiff Class Members to request exclusion or object to the Settlement.

### F.  The Proposed Notices and Claims Process Are Reasonable.

The Court must ensure that Plaintiff Class Members receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).  Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  A settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with

adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

The Class Notice, attached respectively as **Exhibit A** to the Settlement Agreement, and manner of distribution negotiated and agreed upon by the Parties is "the best notice practicable." FED.R.CIV.P. 23(c)(2)(B). All Plaintiff Class Members have been identified and the Class Notice will be mailed directly to each Plaintiff Class member. In addition, the proposed Notice is clear and straightforward, and provides information on the meaning and nature of the class definitions, the class action, the terms and provisions of the Settlement Agreement, and the monetary awards that the Settlement will provide.

The proposed Notice also fulfills the requirement of neutrality in class notices. *See* CONTE & NEWBERG at § 8.39. They summarize the proceedings necessary to provide context for the Settlement Agreement and summarize the terms and conditions of the settlement, including an explanation of how the settlement amount will be allocated between the named Plaintiffs, Class Counsel, the Settlement Administrator, and the Settlement Class Members, in an informative, coherent and easy-to-understand manner, all in compliance with the Manual for Complex Litigation's recommendation that "the notice contain a clear, accurate description of the terms of the settlement." MANUAL FOR COMPLEX LITIG. at § 21.312.

The Class Notice clearly explains the procedures and deadlines for requesting exclusion from the Settlement, objecting to the estimated award, the consequences of taking or foregoing the various options available to Class members, and the date, time and place of the final settlement approval hearing. Pursuant to Rule 23(h), the proposed Class Notice also sets forth the amount of attorneys' fees and costs sought by Plaintiff, as well as an explanation of the procedure by which Class Counsel will apply for them. In addition, the Class Notice explains that Class members have the opportunity to object to Class Counsel's motion for attorneys' fees and costs. The Class Notice clearly states that the settlement does not constitute an admission of liability by Defendant. It makes clear that the final settlement approval decision has

yet to be made. Accordingly, the Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. CONTE & NEWBERG at §§ 8.21 and 8.39; MANUAL FOR COMPLEX LITIG. at § 21.311 and 21.312.

Furthermore, reasonable steps will be taken to ensure that all Plaintiff Class Members receive the Notices. Before mailing, Defendant shall provide to KCC a database that contains the last-known name, mailing address, and Social Security Number for all Plaintiff Class Members along with their qualifying workweeks for calculating their respective monetary recovery.  The Settlement Administrator shall use one or more commercially-reasonable skip tracing methods to update the contact information in the Database.  Within 10 calendar days of receipt of the Database from Defendant, KCC will mail the Class Notice to each Plaintiff Class member.  With respect to Class Notices returned as undeliverable, KCC will promptly attempt to obtain a valid mailing address by use of one or more skip trace databases such as the Equifax, National Change of Address ("NCOA") database search, and skip trace.  If another address is identified, KCC will send the Class Notice to the new address. Class members will have 45 days from the mailing of the Class Notice to opt-out, object to the Settlement, or dispute the information shown on his or her Class Notice. Any Plaintiff Class Member who fails to submit a timely request to exclude themselves from the Settlement will be deemed a Settlement Class Member whose rights and claims are determined by any order the Court enters granting final approval, and any judgment the Court ultimately enters in the case.

Because the proposed Notice clearly and concisely describes the terms of the Settlement and the obligations of Settlement Class Members who participate, and because the Notice will be disseminated in a way calculated to provide notice to as many Class Members as possible, the Class Notice should be preliminarily approved.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement.


Date: June 14, 2017                             Respectfully submitted,

                                                RIGHETTI GLUGOSKI, P.C.


                                                __/s/ Michael Righetti_____
                                                Michael Righetti
                                                RIGHETTI GLUGOSKI, P.C.
                                                Attorneys for Plaintiff and the Class